BOARD OF FINANCIAL CONTROL FOR BUNCOMBE COUNTY v. UNION PROPERTY CO. et al.—114 S. W. (2d), 62.

Middle Section.    July 17, 1937.

Petition for Certiorari denied by Supreme Court, Jan. 15, 1938.

Pitts, McConnico, Hatcher & Waller, of Nashville, for appellant.
Cornelius, McKinney & Gilbert, of Nashville, for appellee.

FAW, P. J. This record presents a controversy between a judgment creditor and a garnishee. The chancellor dismissed the garnishment and the judgment creditor appealed to this court and has assigned error here.

By decree entered in this cause on May 12, 1933, the chancery court of Davidson county, part 2, adjudged and decreed that the complainant Board of Financial Control for Buncombe County, a North Carolina corporation, have and recover of the defendants Union Property Company, a Tennessee corporation, and . Stuart Kritzky, the sum of $28,571.33 and all the costs of the cause, for all of which execution was awarded.

Pursuant to the aforesaid judgment, a fieri facias issued to the sheriff of Davidson county on November 18, 1935, and by virtue of said execution a garnishment notice in accordance with the provisions of the Code, sections 8946, 8947, was served upon the Nashville Trust Company, and, on November 29, 1935, said garnishee filed an answer, verified by the oath of its secretary, which answer is as follows:

"Answer of Nashville Trust Company, Garnishee. On November 26, 1935, the Sheriff of Davidson County, Tennessee, served notice on the Nashville Trust Company, reciting that by virtue of an execution in the above styled cause your respondent should answer on November 29, 1935, before the Honorable Clerk of this Court, the following questions touching the property and effects of the Union Property Company;

"1st. 'Whether you were at the time of serving this garnishment indebted to the said Union Property Company, Inc., and if so, how and to what amount;

"2nd. 'Whether you had in your possession, or under your control, any property, debts, or effects belonging to the said Union Property Company, Inc., at the time of serving this notice; or at the time of answering, or at any time between the date of service and the time of answering, and if so, the kind and amount;

"3rd. 'Whether there are to your knowledge and belief, and, what property, debts and effects in the possession or under the control of any other, and what person.'

"As its answer to such garnishment, the Nashville Trust Company respectfully shows to the Court:

"The Union Property Company, by a certain deed of trust dated May 28, 1930, and recorded in Book 708, page 538, Register's Office

for Davidson County, Tennessee, conveyed to Charles Nelson, Vice-President of the Nashville Trust Company, and his successors in office, as Trustee, with power in said Trustee to sell, a certain lot or parcel of real estate in Davidson County, Tennessee, described in said deed of trust. Said deed of trust was made to secure the Nashville Trust Company of Nashville, Tennessee, in the payment of the principal sum of $150,000.00 and interest from date at the rate of 6% per annum.

"Your respondent would further show that on May 2, 1932, foreclosure having taken place, after default by the Union Property Company and in accordance with the terms of said deed of trust, said property was sold to the Nashboro Property Company, a Tennessee corporation, of Nashville, Tennessee, for $150,000.00 cash, and Charles Nelson, Vice-President of the Nashville Trust Company, Trustee, accordingly executed to the Nashboro Property Company a deed to the real estate described in the deed of trust aforesaid.

"Respondent would now show that subsequent to said foreclosure sale there came into the hands of the Nashville Trust Company certain sums of money belonging to the Union Property Company which were deposited to the credit of said Union Property Company and amounted to $1,262.16.

"Respondent would show that the amount of the indebtedness owing by the Union Property Company to the Nashville Trust Company on May 2, 1932, the date of the foreclosure above mentioned, was in excess of $150,000.00, the amount bid at the foreclosure sale, such excess amounting to more than $1,262.16. Furthermore, since Charles Nelson, Vice-President of the Nashville Trust Company, had acted as Trustee in said foreclosure sale, said Nashville Trust Company became entitled to receive, in addition to its debt, a Trustee's fee and other expenses of foreclosure, which greatly exceeded $1,262.16.

"For the reasons above set out, your respondent, in answer to the questions which it is required to answer as garnishee by the garnishment served on it on November 26, 1936, as aforesaid, answering says:

"1st. The Nashville Trust Company was not indebted to the said Union Property Company at the time of the serving of the garnishment in any amount whatsoever, but, on the contrary, the Union Property Company was on said date of November 26, 1935, indebted to the Nashville Trust Company in an amount in excess of the deposit of $1,262.16 standing on the books of the Nashville Trust Company to the credit of the Union Property Company.

"2nd. The Nashville Trust Company did not have at the time of the serving of the garnishment, does not have at the time of the filing of this answer, or at any time between the date of service and the time of answering, in its possession or under its control, any property,

debts or effects belonging to the said Union Property Company, except the deposit of $1,262.16 above mentioned, which the Nashville Trust Company is entitled to claim and apply as a credit on the indebtedness of the Union Property Company to it, in accordance with the law of Tennessee pertaining to set-off.

"3rd. To the best of the knowledge and belief of the Nashville Trust Company, there are no property, debts or effects in possession or under the control of any other person which belong to the Union Property Company.

"And now having fully answered said garnishment, the Nashville Trust Company prays to be hence dismissed with its reasonable costs."

On January 10, 1936, an order was entered in the cause as follows:

"In this cause it appearing that complainant desires to controvert the facts and conclusions of law stated and relied upon in the answer of Nashville Trust Company, Garnishee, filed in this cause on November 29, 1935, under execution No. 50255, it is ordered by the Court, by consent of the parties, that the complainant be and is given leave to cross examine Warner McNeilly, the Secretary of the Nashville Trust Company, Garnishee, and that the parties take and file such other proof upon the issues as may be desired for presentation to the Court, in order that said issues may be determined."

The deposition of W. W. McNeilly, secretary of the garnishee corporation, was taken and filed, and, by stipulation, a copy of the deed of trust mentioned in the aforesaid answer of the garnishee was filed as evidence, and, upon the record made up as aforesaid, the chancellor heard the cause, and his decree was entered on May 7, 1936, as follows:

"In this cause came the complainant and joined issues on the allegations in the answer of Nashville Trust Company, Garnishee, claiming a set-off, whereupon the cause came on to be heard before Chancellor James B. Newman, upon the proof and the entire record, and upon consideration thereof, it is ordered, adjudged and decreed by the Court that said Nashville Trust Company, Garnishee, is entitled to a set-off for a Trustee's fee in an amount in excess of the amount in its hands to the credit of defendant, Union Property Company, and that the garnishment be and hereby is accordingly dismissed.

"To the foregoing action of the Court the complainant excepts and prays an appeal to the Court of Appeals, Middle Section, at Nashville, which is granted upon complainant executing an appeal bond in the sum of $250.00 conditioned as required by law. In the event the appeal is perfected, the Clerk and Master shall attach the exhibits to the transcript in their original form."

On May 26, 1936, a consent order signed by counsel for all the interested parties, respectively, was entered in the cause, as follows

"In this cause it appearing from statement of counsel that Mortgage Loan & Investment Company, a North Carolina corporation with principal office and place of business in Asheville, North Carolina, has

acquired the assets of Board of Financial Control of Buncombe County, North Carolina, including the note and decree thereon in this cause, it is accordingly ordered, adjudged and decreed that said Mortgage Loan & Investment Company be and hereby is substituted as complainant herein, and as such is authorized to perfect the appeal in this case as previously authorized. This order is by consent as evidenced by the signatures hereto of the solicitors for the parties in interest.''

The Mortgage Loan & Investment Company accordingly perfected the appeal by filing an appeal bond on May 26, 1936, and in this court it has filed a single assignment of error, that ''the Chancellor erred in decreeing that the garnishee was entitled to a set-off for a trustee's fee, and in dismissing the garnishment.''

Certain facts disclosed by the record will now be stated.

On May 28, 1930, the Union Property Company, a corporation, conveyed certain parcels of real estate in the city of Nashville, Tenn., to ''Chas. Nelson, Vice-President,'' as trustee, to secure the payment to the Nashville Trust Company for money loaned, as evidenced by ''one principal note of $150,000.00 due in three years after date, with interest payable at the rate of six per cent per annum, as evidenced by six semi-annual interest notes, also of even date herewith, for $4,500.00 each, due in six, twelve, eighteen, twenty-four and thirty-six months after date.'' Said deed of trust was registered in the register's office of Davidson county on May 29, 1930.

Thereafter, and prior to May 2, 1932, the Nashville Trust Company was merged with the American Trust Company and the Fourth & First Bank and Trust Company ''under the name of the Nashville & American Trust Company,'' and, at the instance of the latter corporation, the trustee foreclosed the trust deed, after advertisement, by sale at public auction, on May 2, 1932, to the Nashboro Property Company, a Tennessee corporation.

On June 6, 1933, the Nashville & American Trust Company ''sold its assets to an entirely new corporation under the name of Nashville Trust Company,'' and the latter company is the garnishee and appellee in this case.

At the time of the aforesaid advertisement and foreclosure sale, the Union Property Company had defaulted in the payment of interest approximating $9,000, and, under the terms of the trust deed, the entire debt secured thereby was, at the option of the holder, ''due and payable immediately, principal and interest,'' and the trustee was authorized to foreclose the trust deed, upon demand of the holder of the secured debt.

Prior to said foreclosure sale, three of the stockholders of the trustor, Union Property Company, viz., Dr. W. A. Bryan, B. W. Graves, and J. M. McHenry, had certain negotiations and agree-

ments with the Nashville & American Trust Company, the holder of the secured debts, which were, in substance, as follows:

The three gentlemen above named proposed to "form a new corporation to bid at the trustee's sale," and it was agreed that in the event such "new corporation" should become the successful bidder at the price of $150,000, the Nashville & American Trust Company would lend the new corporation $150,000, to be secured by trust deed on the property, and would waive trustee's fees for foreclosure; provided, the purchasing corporation would pay the interest in default on the Union Property Company's debt, and the cost of advertising the foreclosure sale, and also assume the payment of delinquent taxes, if any, on the property.

Pursuant to the agreement above stated, Messrs. Bryan, Graves, and McHenry procured the incorporation of the Nashboro Property Company, which corporation bought the property at the foreclosure sale for the price of $150,000, for which sum it executed its note to the Nashville & American Trust Company, and paid to Nashville & American Trust Company the past-due interest on the Union Property Company debt and the "advertising fee."

As stated by Mr. McNeilly in his deposition, the transaction, "so far as the Nashville & American Trust Company was concerned . . . was simply a transfer of the indebtedness from the Union Property Company to Nashboro Property Company, without any loss to the holder of the mortgage."

At the time of the aforesaid foreclosure sale on May 2, 1932, the Nashville & American Trust Company was, according to its books, indebted to the Union Property Company in the sum of $220.03. This balance to the credit of Union Property Company had accrued from rents collected by the trust company by virtue of a provision in the trust deed of May 28, 1930, making the Nashville Trust Company the agent of Union Property Company to collect all rents due under any and all leases on the property described in said trust deed.

Subsequent to the foreclosure, the sum to the credit of Union Property Company on the books of the trust company was augmented by additional credits for "back rents" due the Union Property Company which were collected by the trust company, and some return premiums on fire insurance policies, and at the time the garnishment notice was served there was a "deposit of $1,262.16 standing on the books of the Nashville Trust Company to the credit of the Union Property Company," and no "items of indebtedness against Union Property Company on the books" of the trust company.

However, it is contended by the trust company that it is entitled to set off the trustee's fees ($2,500) against its debt to Union Property Company, for the reason that its agreement to waive trustee's fees was with the Nashboro Property Company alone, and that the Union

Property Company was not a party to the agreement, and is not entitled to any benefit therefrom.

Relative to the subject-matter of the controversy, we quote certain excerpts from the deposition of Mr. McNeilly, secretary of the garnishee corporation, as follows:

"Q. I believe the Nashville Trust Company answered that it had on deposit to the credit of Union Property Company, the defendant in this cause, the sum of $1,262.16, is that correct? A. Yes.

"Q. How did the Nashville Trust Company acquire this deposit? A. On May 2, 1932, the mortgage of the Union Property Company was foreclosed, and after the foreclosure there were certain back rents collected, and there was an adjustment of the unearned insurance, which was charged to the Nashboro Property Company, which corporation purchased the property at the foreclosure, and an adjustment for taxes, which left the balance as above stated. . . .

"Q. The new company paid up the delinquencies and made a loan on the property for a hundred and fifty thousand dollars, which was the principal amount of the old loan; did that leave any items of indebtedness against the Union Property Company on the books of the Nashville and American Trust Company? A. Never left any on the books, but the Union Property Company would have been charged with any fees incident to it. There was no agreement between the Union Property Company and the Trust Company, as to any expenses of the sale.

"Q. But there was no charge made on the books and no charge made against the Union Property Company? A. No, because we do not make charges of that kind until they are paid.

"Q. And although the mortgage was foreclosed in May, 1932, there has never yet been any charge made on the books of either Nashville and American Trust Company or its transferee, Nashville Trust Company, against the Union Property Company? A. There has been no charge made on the books.

"Q. Of course the Nashville Trust Company, the garnishee in this case, only acquired from Nashville and American Trust Company, such assets as were shown on the books of Nashville and American Trust Company to be assets? A. No, they acquired any assets that might be charged off for claims or anything of that kind, any asset that the Nashville and American Trust Company might have, unless they were explicitly excluded from the trade.

"Q. Now this amount of $1,262.17 came into the hands of Nashville and American Trust Company after the foreclosure sale, and after the new loan had been made to the Nashboro Property Company, is that correct? A. Except $220.03 was on the books at the time of the foreclosure, and there were unpaid rents which were later collected and credited into this account.

"Q. Will you read the dates as of which each entry was made

on the books of Nashville and American Trust Company, showing the receipt of the items for the account of the Union Property Company, which finally aggregated this sum of $1,262.16? A. That is rather hard to figure all those, because we also adjusted insurance in connection with that, there was some insurance that had been paid up and some that hadn't been paid up, we paid it all up out of this account and charged the Nashboro Property Company with this unpaid insurance, and charged the Union Property Company with one-third of the current taxes.

"Q. Well at the date of the foreclosure, which was May 2nd, 1932, what was the state of the account as between Union Property Company and the Nashville and American Trust Company, as to this mortgage? A. They owed us principal of a hundred and fifty thousand dollars, interest due on November 24, 1931, of $4,500.00 and of course accrued interest from that date up to the date of the foreclosure, which is nearly six months, pretty close to four thousand dollars, was due on that date, about eighty-five hundred dollars, approximately, was due at that time.

"Q. Then what funds did the Nashville and American Trust Company have in its hands to offset that? A. At that time we had $220.03.

"Q. Now when the new mortgage was made, all of those items of indebtedness of Union Property Company to Nashville and American Trust Company were wiped out and assumed one way and another by Nashboro Property Company, leaving this item of $220.03 still owing to the Union Property Company? A. That is right.

"Q. Is that correct? A. That is right.

"Q. Then when was the next receipt made by the Nashville and American Trust Company for the account of the Union Property Company? A. On May tenth we collected March rent of Myers Manufacturing Company for a hundred dollars.

"Q. That was May 10, 1932? A. Yes.

"Q. Then when was the next receipt? A. On May fourteenth we collected twenty dollars from H. B. Bond.

"Q. Well without going into detail, those receipts finally aggregated this amount about which you have testified? A. The balance finally amounted to $1,262.16, that we still show to their credit.

"Q. Now was there any agreement with the gentlemen who had formerly been stockholders of Union Property Company and who formed this new corporation, Nashboro Property Company, to take over the property, with reference to a trustee's fee? A. Under date of April 18th, Mr. Cornelius writing for Dr. Bryan, Mr. Graves and Mr. McHenry, proposed that they would bid at the sale, and said: 'It is my understanding that if the Nashboro Property is the successful bidder at the foreclosure, the Nashville Trust Company will waive

trustee's fees and all other expenses incident to the foreclosure, except advertising fees and other incidental expenses regarding a sale.'

"Q. Well the transaction was carried out on that basis? Was it not? A. Carried out on that basis so far as they were concerned.

"Q. Mr. McNeilly, there was never any agreement with the Union Property Company as a corporation contemplating that the Nashville and American Trust Company would waive any trustee's fees? A. We had no agreement with the Union Property Company.

"Q. As a matter of fact the corporation had no dealings with you, and the foreclosure was precipitated by the inability of the corporation, Union Property Company, to function as such? A. At least to pay its interest.

"Q. Yes, and at the conclusion of the sale, there was $220.00 and some cents to the credit of the Union Property Company on the books of the Nashville and American Trust Company? A. That is true.

"Q. And no disposition was made of that balance, but it remained on the books? A. It did.

"Q. And as a matter of fact you recall that there was quite some negotiations about interest and insurance and these credits came about later by virtue of those adjustments, this additional credit, the difference between two hundred and twenty dollars and twelve hundred and sixty-two dollars? A. I don't know that there was any controversy over it or not.

"Q. I didn't mean a controversy? A. I remember going over the accounts myself and all these rents having been collected after the foreclosure, had been put into one account, and I think on my own initiative I decided the new company was not entitled to back rents, and that they also should account for the insurance that was turned over to them, at least for the unearned premiums, and I made the entries and separated the accounts on that basis. Whether I had any authority, I don't know.

"Q. However you did that? A. Yes.

"Q. By negotiations with the Nashboro Property Company you got their agreement to the adjustment of the account? A. That is true, they accepted it as being correct.

"Q. The point I am making is there was only two hundred and twenty dollars in the account of the Union Property Company at the time of the foreclosure sale? A. Yes.

"Q. And, therefore, the Nashville and American Trust Company did not have in contemplation the waiver of any credit that now appears on the account? A. No, sir.

"Q. You did not mean to give to the Nashboro Property Company the two hundred and twenty dollars then to the credit of the Union Property Company? A. No, there was no intention of giving to the

Nashboro Property Company anything in this account, and these adjustments were not made until December, when I discovered they had been credited on the account for all of it.

"Q. And there has never been any intention on your part to waive, or to give to the Nashboro Property Company any of the credit on that account which the Union Property Company was entitled to? A. No, not the Nashboro Property Company, that was my object in separating the account, in just transferring the amount to the account, transferring what I thought belonged to the account of the company.

"Q. Now Mr. Charles Nelson, vice-president of the Nashville and American Trust Company, after the merger, was working on a salary, wasn't he? A. Yes.

"Q. And is it customary for the Nashville and American Trust Company, and for trust companies as a matter of fact in the City of Nashville, to name one of their officers as trustee under a deed of trust of this sort? A. I can only speak for our own concern, it is with us. I think it is true of those others, but I don't know.

"Q. And trustee fees in event of foreclosure are collected? A. That is true whenever possible.

"Q. And they are paid into the treasury of the trust company and do not become the property of the individual officer who serves as trustee? A. No, we do not take any compensation whatsoever outside for anything that fees are collected for, that goes into the company.

"Q. And it is a part of the company's property? A. That is true.

"Q. So that in this case the Nashville Trust Company, through its vice-president Mr. Charles Nelson, became legally entitled to collect foreclosure fees on a mortgage of a hundred and fifty thousand dollars? A. I think so.

"Mr. Waller: That is objected to because argumentative, and as calling for a conclusion of law.

"Q. There was never any waiver of these fees, except in so far as Dr. Bryan, Mr. Graves and Mr. McHenry are concerned? A. And the new corporation they were to form.

"Q. No one else asked for any waiver? A. Not to my knowledge.

"Q. Union Property Company never asked for any waiver? A. Not to my knowledge.

"Q. And you made none to the Union Property Company, so far as your records show? A. So far as the records show, or my knowledge goes. . . .

"Q. As I understand it, Mr. McNeilly, the Nashville and American Trust Company did not make any agreement with the Union Property Company to waive trustee's fees, but its agreement to that effect was with the Nashboro Property Company, and the parties who were

organizing the Nashboro Property Company, in the event they were the successful bidders at the sale? A. Yes.

"Q. And they were the only bidder and the successful bidder? A. They were the successful bidder, and as far as I know the only bidder.

"Q. In fact they had agreed to make the bid prior to the sale, had they not, on that condition? A. They agreed they would bid the debt of the Union Property Company as of May second, 1932, at the sale, and stated they would, I don't know that that is an agreement.

"Q. It was under the conditions stated by Mr. Cornelius in his letter to which you refer? A. Well they said they would bid, and they understood in the event they were the bidders, we would waive the fees, and that was done; I don't know that there was any writing as a matter of fact but in any event, we didn't charge them with any costs except advertising costs."

Chas. Nelson, the trustee named in the said deed of trust of May 28, 1930, and to whom, under the terms of the deed of trust, any compensation accruing to the trustee would be payable, is not a party to this litigation. It is seen that Mr. McNeilly testified that Mr. Chas. Nelson, the trustee, was vice-president of the Nashville & American Trust Company and was working on a salary; that it was customary for the Nashville & American Trust Company to name one of its officers as trustee under a deed of trust of the sort involved in this case; that in the event of foreclosure of such trust deeds trustee's fees were collected; and that such fees were paid into the treasury of the trust company as a part of the company's property, and did not become the property of the individual officer who served as trustee.

The record indicates that the case was tried below upon the assumption by the court and all the parties that, by reason of the custom thus proved the beneficiary of the trust, Nashville & American Trust Company, was substituted to all the rights of the trustee, Chas. Nelson, with respect to compensation to the trustee for foreclosure of the trust deed; and the briefs and arguments of all counsel in this court seem to proceed upon such assumption. The case having been thus tried with the acquiescence of all the parties, we will, in the disposition of the case here, adhere to the theory stated in the next preceding paragraph hereof, without undertaking to determine the validity of such an arrangement. Nolen v. Family Loan Co., 19 Tenn. App., 108, 113, 83 S. W. (2d) 559.

"One of the most important results of the rule that questions which are not raised in the court below cannot be raised in the appellate court is that a party cannot, when a case is brought up for appellate review, assume an attitude inconsistent with or different from that taken by him at the trial, and that the parties are restricted to the theory on which the cause was prosecuted or defended in the court

below. Accordingly, where both parties act upon a particular theory of the cause of action, they will not be permitted to depart therefrom when the case is brought up for appellate review. The same rule governs where the parties act upon a particular theory of defense or of opposition thereto.'' 4 Corpus Juris Secundum, Appeal and Error, page 465, section 241, citing many cases in support of the text.

However, the appellee, Nashville Trust Company, cannot successfully assert any higher rights against the Union Property Company than the trustee could have maintained in the absence of the aforesaid custom which (according to the implied concession of the parties to this suit) operated as an assignment of the ''trustee's fees'' to the holder of the secured debt, Nashville & American Trust Company; and, on this hypothesis, we will consider the appellee's claim to a right of action against the Union Property Company for trustee's fees as if it were asserted by the trustee himself.

█ In the absence of an applicable statute (and we have none), whatever rights to compensation or fees the trustee had, or has, depend upon the stipulations of the trust deed of May 28, 1930. Johnson v. Glenn, 80 Md., 369, 370, 30 A., 993; Philips v. Bailey, 82 Mo., 639, 649; Thomas v. Jones, 84 Ala., 302, 304, 4 So., 270; Dillard v. Serpell, 138 Va., 694, 704, 123 S. E., 343; Heffron v. Gage, 44 Ill. App., 147, 149; Cannon v. McCape, 114 N. C., 580, 583, 19 S. E., 703, 20 S. E., 276; Wiltsie on Mortgage Foreclosure, 4th Ed., Vol. 2, sec. 927; 41 C. J., p. 1021, sec. 1485.

█ The trustor may, by appropriate stipulations in the trust instrument, obligate himself personally for trustee's compensation, even to the extent of relieving the proceeds of sale of such charge. Mercantile Trust & Deposit Co. v. Atlantic & N. C. Railroad Co., 99 N. C., 139, 5 S. E., 417; Neptune Insurance Co. v. Dorsey, 3 Md. Ch., 334, 341.

In view of the rules above stated, it is necessary to ascertain the stipulations of the trust deed of May 28, 1930, touching the subject of compensation to the trustee named therein.

█ It is provided in said trust deed that:

''The proceeds of any sale shall be applied as follows:

''1st. To pay the expenses of making, maintaining and executing this trust, and protecting the property, including the necessary expenses of any litigation, reasonable attorney's fees and a commission of five per cent. upon the amount of the sale to the party of the third part for his services.

''2nd. To pay the debts and obligations herein secured or intended so to be.

''3rd. To pay the surplus, if any, to the person or persons legally entitled thereto.''

The "party of the third part" mentioned in the above quotation is the trustee, Chas. Nelson.

There are certain other provisions of the aforesaid trust deed upon which appellee is relying (to which we will refer later herein), but, assuming for the present that the determination of this controversy is governed by the last-quoted stipulations, it is, we think, obvious (1) that the trustee's "commission" is thereby made a charge upon the proceeds of any sale by the trustee under the granted powers, prior and superior to the secured debts, and (2) that said stipulations contain no covenant of the trustor, Union Property Company, binding it to pay the trustee's "commission" in the event of the trustee's failure to retain same out of the proceeds of sale.

Although the purchaser at the trustee's sale (Nashboro Property Company) satisfied the holder of the secured debts (Nashville & American Trust Company), it (the purchaser) would not have been entitled to a deed from the trustee if the trustee had not "waived" his "commission." Atherton v. Hull, 12 W. Va., 170, 182.

As before stated, appellee is relying upon certain other provisions of the trust deed for support of its claimed set-off, and, referring to these provisions, it is said in appellee's brief that "printed paragraphs in the deed of trust numbered 6th and 8th clearly state the obligation of the Union Property Company to pay a trustee's fee in the event of foreclosure."

The "printed paragraphs" to which appellee thus refers are as follows:

"6th. Will pay such expenses and fees as may become necessary to be incurred in the protection of the property, and the maintenance and execution of this trust, including all attorneys' fees and costs whenever it may become necessary or (in the opinion of the Trustee) desirable to employ an attorney in any matter (whether arising from suit or otherwise) which involves in any way the aforesaid debt, land, or this Deed of Trust, by whomsoever instigated.

"8th. The party of the second part may at its discretion advance and pay such sums as may be proper to satisfy taxes, maintain insurance and repairs, and protect and preserve the property, and such amounts as paid, with interest thereon, shall be held and treated and paid as part of the expenses of administering this trust. If said party of the first part shall pay and discharge said obligations and interest, or any notes given in renewal of the notes herein or any notes given as evidence of interest or any extension of time of the payment of the debt herein secured when the same shall become due, and shall pay such sums as shall be necessary to discharge taxes and maintain insurance and repairs and the costs, fees and expenses of making, enforcing and executing this trust, when they shall severally be due and payable, then this conveyance shall become void, and shall

be released by the party of the second part at the costs and expenses of the party of the first part (and in case of failure of the party of the second part to release this Deed of Trust, all claims for statutory penalty or damages is hereby waived); otherwise to be of full force and effect.

"But if the party of the first part shall fail to pay such debt or any installment of interest thereon, or fail to pay any sum necessary to satisfy and discharge taxes, or to maintain insurance or repairs, or the necessary expenses of protecting the property and executing this trust, and after demand by the party of the third part for said amounts, or any of them, and upon their failure to comply with or conform to any of the foregoing covenants and agreements, then the debt herein secured, at the option of the owner thereof, shall become due and payable immediately, principal and interest, without notice, and this Deed of Trust may be foreclosed by judicial proceedings, or the party of the third part or his successor (either in person or by his authorized agent or attorney) is hereby authorized and empowered to enter and take possession of the said property and before or after entry to advertise the same by publication in some newspaper once a week for four consecutive weeks, therein appointing a day and place of sale and giving the terms thereof; and at said time and place (either in person or by his authorized agent or attorney) to sell the land and premises above described, to the highest bidder at public auction, free from the equity of redemption, homestead, dower and curtesy of the party or parties of the first part or either of them, and all other exemptions, all of which are hereby expressly waived, and the said party of the third part, or his successor in trust, shall execute a conveyance in fee simple to the purchaser, and deliver possession thereof to said purchaser."

In the deed of trust, Union Property Company is "the party of the first part;" Nashville Trust Company is "the party of the second part;" and Chas. Nelson, trustee, is "the party of the third part." The party of the first part is the covenantor in the sixth paragraph, supra.

It is seen that the sixth and eighth paragraphs above quoted contain covenants by the party of the first part (Union Property Company), with provisions that if these covenants are performed the conveyance "shall become void" and be released; but if such covenants are not performed, the deed of trust may be foreclosed, either "by judicial proceedings" or through sale by the trustee to the highest bidder at public auction, after advertisement, etc.

With respect to the point of the present controversy, our interpretation of the sixth and eighth paragraphs above quoted from the deed of trust is aptly stated in the reply brief of counsel for appellant, as follows:

"These paragraphs do not refer to a trustee's fee or commission for

foreclosure. On the contrary, they refer to expenses and fees which may become necessary to be incurred in the protection of the property, and the maintenance and execution of the trust. The failure to pay such expenses or fees would have constituted a breach of covenant authorizing foreclosure. It did not become necessary for any expenses or fees to be incurred in this connection, and no demand was ever made upon Union Property Company in that respect.

"It is clear that the expenses and fees referred to in these paragraphs could not include expenses and fees of foreclosure, because it was stipulated that the deed of trust might be foreclosed if Union Property Company failed to pay them after demand by the Trustee. Expenses and fees of foreclosure could arise only as the result of foreclosure, and obviously the deed of trust could not be made subject to foreclosure because of failure to pay expenses and fees of foreclosure."

For the reasons thus clearly and succinctly stated by counsel, we are of the opinion that the sixth and eighth paragraphs, supra, were manifestly not intended to include a covenant on the part of the Union Property Company to pay a trustee's commission for foreclosing the trust deed, but related to such expenses and fees as might become necessary to be "incurred" in the protection of the property and the maintenance and execution of the trust antecedent to foreclosure.

It results that the appellant's assignment of error is sustained. The decree of the chancery court is reversed, and a decree will be entered here granting a recovery against the garnishee, Nashville Trust Company, and in favor of the Mortgage Loan & Investment Company, for $1,262.16, with interest thereon from the date of the decree below (May 7, 1936), and for the costs of the cause, including the costs of the appeal, for all of which execution may issue.

Crownover and Felts, JJ., concur.