CARL B. TURNER, Complainant-Appellant, v. MAX
ZAGER, Defendant-Appellee.—363 S. W. (2d) 512.

Middle Section, at Nashville.  June 29, 1962.

Certiorari Denied by Supreme Court November 9, 1962.

676

Stanly T. Snodgrass, Nashville, for appellant.

Ernest C. Matthews, III, Herbert R. Rich, Nashville, for appellee.

CHATTIN, J. The complainant, Carl B. Turner, filed this suit in the Chancery Court of Davidson County, Tennessee, against the defendant, Max Zager, for specific performance of a contract.

It is alleged in the bill that defendant is a principal stockholder in the Fairfax Corporation; that it is a Tennessee corporation and was chartered on the 3rd day of April 1958; and that defendant purchased two hundred forty shares of the six hundred shares of capital stock of the company.

That prior to the formation of the Fairfax Corporation, complainant was given the right by the defendant of purchasing ten per cent of the outstanding stock of the Corporation, constituting sixty shares thereof, at a fixed price of $100.00 per share (par value), plus interest at six per cent per annum on the purchase price from the date of April 8, 1958, until the date he exercised his right to purchase.

That on May 9, 1958, a memorandum of the oral agreement was executed by the parties. This agreement is as follows:

"This Agreement made between Max Zager, Greensboro, North Carolina and Carl B. Turner, Davidson County, Nashville, Tennessee.

"In consideration of satisfactory service to be rendered by Carl Turner to Fairfax Corporation, a Tennessee Corporation, Max Zager agrees to indemnify Carl B. Turner to the extent of 10% of the net profits of the Fairfax Corporation, such profit shall be determined by the books of the said Corporation.

"This compensation shall accumulate until Carl B. Turner has sufficient funds to purchase sixty (60) shares of stock held by Max Zager in the said Corporation. Upon transfer of the said stock, Carl B. Turner agrees to deliver to Max Zager an irrevocable voting proxy for the shares of stock transferred. The purchase price of the stock shall be book value at the time of the purchase, plus 6% interest on this base price of the original stock issued at $100.00 per share as of April 8, 1958.

"Upon transfer of stock, Carl B. Turner will own 10% interest in the Fairfax Corporation and this profit sharing agreement will be terminated. This stock shall be non-transferable; Max Zager has the option to purchase same for book value.

"This agreement can be terminated by either party with or without cause on ten day notice. In the event of termination, Carl B. Turner will be compensated on the basis of 10% of the net profits reflected by the books of the Corporation at that time.

"This agreement signed and sealed this 9th day of May, 1958.

"Max Zager
"Max Zager
"Carl B. Turner
"Carl B. Turner

"Approved by Officer of Fairfax Corporation

"Albert Morris
"Albert Morris."

It is further alleged the provision to terminate the written agreement only applied to the employment of complainant with the corporation, and was not applicable to the right of complainant to purchase stock from the defendant, Max Zager.

It is further charged complainant faithfully performed his part of the contract by performing valuable services to the Fairfax Corporation up to and including the date of January 18, 1960. That on January 18, 1960, defendant wrote complainant terminating complainant's employment with the Fairfax Corporation.

It is further alleged that on January 23, 1960, complainant notified defendant he was prepared and ready to exercise his right to purchase the sixty shares of stock of the Fairfax Corporation, upon completion of an audit of the Corporation's books. That on several occasions since writing the letter to defendant, complainant has personally contacted defendant and demanded he transfer to him the sixty shares of stock. The defendant has refused to perform his agreement.

It is alleged the value of the stock of the Fairfax Corporation has materially increased in value since the Company was formed.

The prayer of the bill is for specific performance of the contract and for a mandatory injunction requiring the defendant to deliver the sixty shares of stock to complainant.

In the alternative, complainant prays for an award of damages in money equivalent to the increment in value of the stock from May 9, 1958, until the determination of the suit.

The defendant, in his answer, admits complainant and defendant had an oral agreement whereby defendant agreed to sell to complainant sixty shares of stock in the Fairfax Corporation. But avers the purchase price was to be book value and not at fixed price of $100.00 per share.

It is admitted the parties entered into the written memorandum dated May 9, 1958. It is averred, however, in this connection, the written memorandum was intended to replace the previous oral agreement.

The defendant denies the provision in the written memorandum as to the termination of the contract by either party applied only to the employment of complainant with the Corporation.

The defendant admits on January 23, 1960, complainant wrote defendant seeking to exercise his option of purchasing the sixty share of stock in the Fairfax Corporation. He admits he wrote the cancellation letter of January 18, 1960, and that he has refused to comply with the complainant's request to transfer the stock.

It is averred by the defendant the compensation earned pursuant to the agreement by the complainant has not been sufficient to purchase the stock, as provided by the contract, and since his employment has been terminated, under the terms of the agreement; complainant, therefore, will not be able to accumulate enough funds to purchase the stock.

The cause was heard by the Chancellor on oral testimony upon a written stipulation of Counsel for the respective parties.

Complainant was the only witness to testify at the trial. He testified defendant drew the agreement dated May 9, 1958.

He testified that at the time of the formation of the Fairfax Corporation the stockholders, Albert G. Morris, Jacob Zager, and the defendant, Max Zager, entered into the following agreement:

"It is agreed that the by-laws of the corporation shall provide that no shares of the Company's capital stock may be transferred to other persons except in the case of wives or husbands or lineal descendants, without first offering the shares to the corporation and/or the other stockholders in accordance with the provisions of the by-laws.

"It is expressly understood and agreed, however, that Max Zager reserves the right to sell to Carl B. Turner, of Nashville, Tennessee, twenty-five per cent of his shares of said capital stock."

He testified he received the letter dated January 18, 1960, written by defendant cancelling the written agreement of May 9, 1958. That he wrote defendant on January 23, 1960, notifying him he was prepared to exercise his right to purchase the sixty shares of stock.

He further testified defendant refused to transfer the stock to him.

He further stated he was ready and willing to perform all of the conditions required of him under the contract to consummate the purchase of the stock.

He also testified he had worked for the Fairfax Corporation from its foundation until January 18, 1960. In this connection he stated the Fairfax Corporation is engaged in the building, owning, and operating apartment houses. He found all the land which is owned by the Corporation, and supervised the building of all the apartment houses. For this work, defendant agreed to give complainant the right to buy sixty shares of the stock in the Corporation.

The Chancellor filed a written opinion in which he found the following facts:

1. The oral contract and written contract dealt with the same sixty shares of stock. The "written contract constitutes a further amplification of the agreement between the complainant and defendant."

2. On January 18, 1960, defendant wrote complainant cancelling or terminating the entire contract.

3. On January 23, 1960, complainant wrote defendant he was ready to purchase the stock. No reply was made to this letter and defendant in subsequent conversations with complainant refused to deliver the stock.

4. Complainant is bound by the written contract of May 9, 1958, "which gives the defendant the option to purchase said stock 'at book value' and thereby the defendant has it within his power to negate a decree for specific performance."

A decree was entered denying complainant's prayer for specific performance and also any recovery for damages since none was shown. Complainant's bill was dismissed with costs.

From this decree complainant has appealed to this Court and has assigned three assignments of error.

"The Court below erred as follows:

"1. In dismissing the original bill of complaint.

"2. In failing and refusing to grant to complainant a decree of specific performance as prayed, or, in the alternative, to grant damages to complainant.

"3. In holding that the writing of May 9, 1958 constituted a binding agreement between the parties which would permit the defendant to negate the Court's decree for specific performance."

We will consider the third assignment of error first.

■ It is the insistence of defendant this assignment should be overruled because the complainant took the position in the trial court the contract of May 9, 1958, was a valid contract; and, therefore, he cannot change his position in this Court and urge the invalidity of this contract.

We think we must agree with this contention.

From the record before us, it is evident the complainant tried the lawsuit in the trial court on the theory the written contract was a valid instrument. Complainant's bill charges:

"That, subsequently, on the 9th day of May, 1958, a memorandum of this agreement was executed by the complainant and the defendant and approved by an officer of the Fairfax Corporation, and incorporated in such memorandum, in addition to complainant's right and privilege to purchase the stock men-

tioned from the defendant, was an additional provision by which complainant was to perform certain services for the Fairfax Corporation and be compensated therefor by receipt of 10% of the net profits of such corporation as reflected by the books of the Company.''

And he further charges:

''That the memorandum of May 9th, 1958, supports the oral agreement alleged to have been made by the defendant with complainant and which has heretofore been set out and detailed in Paragraph IV of this original bill.''

The transcript further reflects the following:

''THE COURT: Well now, wait a minute, right there. What is your suit based on, an oral agreement or a contract?

''MR. SNODGRASS: An oral agreement supported by memorandum in writing. That's the basis of our suit and we, frankly, state to the Court that with respect to this memorandum in writing that your Honor will read, I don't know the construction of it at this time. I am prepared to argue what I think is the construction of it, but I don't know.

''At any rate, our suit is based upon an oral agreement supported by a memorandum in writing.''

In the case of Stamper v. Venable, 117 Tenn. 557, 97 S. W. 812, our Supreme Court quoted the following with approval:

''If parties in court were permitted to assume inconsistent positions in the trail of their causes, the

usefulness of courts of justice would in most cases be paralyzed. The coercive powers of the law, available only between those who consented to its exercise, could be set at naught by all. But the rights of all men are in the keeping of the courts, and consistency of proceeding is therefore required of all those who come in or are brought before them. It may accordingly be laid down as a broad proposition that one, without mistake induced by the opposite party, who has taken a particular position deliberately, in the course of litigation, must act consistently with it. One cannot play fast and loose." Fidelity-Phenix Fire Insurance Company of New York v. Jackson, 181 Tenn. 453, 181 S. W. (2d) 625; Nashville Gas & Heating Company v. Phillips, 17 Tenn. App. 648, 69 S. W. (2d) 914; Clement v. Nichols, 186 Tenn. 235, 209 S. W. (2d) 23.

It is also true complainant testified he signed the written contract; was satisfied with it and ready and willing to comply with its terms.

In the case of Louisville & N. Railroad v. Iron Company, 118 Tenn. 194, 101 S. W. 414, our Supreme Court quoted the following with approval:

"In Herman on Estoppel, 171, it is said:

" 'One entitled to a benefit under an instrument, whether it be a will or a contract, if he claims the benefits of such instrument, he must abandon every right the assertion whereof would defeat even partially the provisions of the instrument. A party cannot occupy inconsistent positions, but will be confined to his election.' "

The record discloses the case was tried below by the parties and the court upon the assumption the written contract of May 9, 1958, was a valid contract.

"When a cause is brought up for appellate review, a party cannot assume an attitude inconsistent with, or different from, that taken by him at the trial, and is restricted to the theory on which the cause was prosecuted or defended in the court below. Accordingly, where both parties act on a particular theory of the cause of action, they will not be permitted to depart therefrom when the case is brought up for appellate review. The same rule governs where the parties act on a particular theory of defense or of opposition thereto." 4 C.J.S. Appeal and Error sec. 241, page 719; Board of Financial Control for Buncombe County v. Union Property Company, 21 Tenn. App. 634, 114 S. W. (2d) 61, 62.

From the record before us it is clear the written contract contains the same subject matter as the oral agreement. It also contains terms inconsistent with the oral contract. We concur in the conclusion of the Chancellor the written contract was an amplification of the oral contract and the complainant was bound by it.

"In the absence of mistake or fraud, a written contract merges all prior and contemporaneous negotiations in reference to the same subject, and the whole engagement of the parties and the extent and manner of their undertaking are embraced in the writing. The written agreement, and not the correspondence which preceded it, is the correct exponent of the contract. All verbal agreements made at or before the time of the execution of a contract are to be considered as merged in the written instrument." 12 Am. Jur., sec. 232, page 756; Young v.

Cooper, 30 Tenn. App. 55, 203 S. W. (2d) 376; Marron v. Scarbrough, 44 Tenn. App. 414, 314 S. W. (2d) 165.

Thus, we must overrule complainant's third assignment of error.

Assignments one and two will be considered together as we think these assignments present the same question.

■ We are of the opinion the question for us to decide is whether or not the provision in the contract giving defendant, "the option to purchase same for book value," also gives to defendant the power to negate a decree of the Chancery Court for specific performance of the contract to transfer the sixty shares of stock to complainant upon complainant complying with his obligations under the contract.

There is no dispute in the record as to complainant exercising his right under the contract to purchase the stock.

The record is clear defendant gave notice to complainant he was terminating the contract ten days from the date of the notice. Within the ten days complainant notified defendant he was ready to exercise his privilege of purchasing the stock under the terms of the written contract. Defendant refused to transfer the stock.

In 81 C. J. S. sec. 47, at page 525, it says:

"[I]t is now well settled that a contract, whereby one party, for a valuable consideration, grants to another an option on terms, conditions, and for a time, specified, to call for the doing of a certain act, constitutes an irrevocable offer which, on acceptance in accordance with its terms, gives rise to a contract

that may be specifically enforced, if it is otherwise a proper subject for such relief, despite the fact that until acceptance there is no contract which the optionee could have been compelled to perform. Accurately speaking, it seems that it is ordinarily not the option itself which is specifically enforceable but rather the contract resulting from an exercise of the option. An option, however, when supported by a valuable consideration, is more than a mere offer, and an attempted revocation will not bar specific performance if there is a subsequent acceptance within the time fixed for exercising the option."

In 49 Am. Jur., sec. 117, at page 137, it says:

"The remedy of specific performance can be invoked only upon the theory that the optionee has accepted the offer and the agreement has ceased to be an option and has ripened into a mutually binding and mutually enforceable contract."

And further at sec. 131, page 154:

"There is nothing in the nature of a contract for the sale of shares of stock in a corporation which precludes a court of equity from assuming jurisdiction to decree its specific performance where the remedy at law is inadequate and other equitable considerations which determine the granting of decrees of specific performance are present. When, therefore, the corporate stock which is the subject of a contract of sale is of unknown and not easily ascertainable value, or is unobtainable in the open market or not readily procurable from the defendant, a suit for the specific performance of the contract of sale may be maintained, the remedy at law in such a case being

regarded as inadequate. In a number of instances it has been held that where the contract involves corporate stock of a peculiar or special value to the complainant, a court of equity may decree specific performance. Hence, it has been held that specific performance may be had of a contract to deliver stock the pecuniary value of which is not readily ascertainable, or where the stock has no market value, as, for example, stock in a closed corporation, or where the value of the stock is not settled but is contingent upon the future earnings of the corporation.''

It is to be noted at the time of the formation of the Fairfax Corporation the stockholders agreed no shares of the capital stock could be sold to other persons other than wives or husbands or lineal descendants without the shares being first offered to the Corporation or other stockholders.

The only exception to the above agreement was the right of the defendant.to sell the sixty shares involved in this litigation to complainant.

It is obvious the Corporation is a closed corporation. Complainant cannot buy stock in the Corporation other than the shares defendant has offered to sell him. Complainant has no adequate remedy at law.

We are of the opinion when complainant gave defendant notice he was ready and willing to exercise his privilege of purchasing the stock a contract resulted which is enforceable in a court of equity by specific performance.

We cannot accept the argument since defendant has the option to repurchase the stock he has the power to

negate a decree for specific performance. He has no power to exercise the option unless he, himself, transferred the stock to complainant.

Defendant cannot negate specific performance because he terminated the contract upon which he must rely for the right to repurchase. Having terminated the contract, there is no contract in existence. If he desired to take advantage of the contract provision permitting him to repurchase, he should have done this upon receiving complainant's acceptance and prior to the termination of the contract in accordance with his own act.

The defendant argues the following clause of the written contract precludes complainant from the relief of specific performance: "This compensation shall accumulate until Carl B. Turner has sufficient funds to purchase sixty (60) shares of stock held by Max Zager in said Corporation."

It is insisted by defendant such a provision to purchase stock from profits *only* is a general provision contained in profit sharing agreements as an incentive to create profits both for the employee and the investor. And, since complainant's employment has been terminated under the terms of the agreement, he will not be able to accumulate enough funds to purchase the stock.

We cannot agree to this contention. To construe this clause of the contract as insisted by the defendant, we would have to delete the words, "until Carl B. Turner has sufficient funds," and substitute the words, "until and only when such funds are sufficient," to purchase sixty shares of stock held by Max Zager in said Corporation. Courts do not make contracts. They can only interpret and enforce them.

■ We think the intention of the parties to the contract undoubtedly was complainant would have the right to purchase sixty shares of stock from defendant. The agreement of the stockholders to allow defendant to sell to complainant the sixty shares of stock supports this conclusion.

■ We do not think the language used in the clause under consideration is ambiguous. But, if we were to concede it is, then the following rules of construction would apply.

"It is the duty of the court in the construction of contracts to ascertain the intention of the contracting parties, understand what they meant by the contract, and give effect to such understanding and meaning. All other rules of construction are only aids or helps in establishing the intention of the parties and for mutual understanding of the meaning of their contract." Commerce Street Company Inc. v. Goodyear Tire and Rubber Company, Inc., 31 Tenn. App. 314, 215 S. W. (2d) 4.

■ "Prior negotiations may be considered to determine the real understanding of the parties concerning the meaning of the terms and provisions of the contract." Commerce Street Company, Inc. v. Goodyear Tire and Rubber Company, Inc., supra.

■ "Where the language of an agreement is contradictory, obscure or ambiguous, or where its meaning is doubtful so that it is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes

a rational and probable agreement must be preferred.''
12 Am. Jur., Section 250, page 792; Commerce Street
Company, Inc. v. Goodyear Tire and Rubber Company,
Inc., supra.

■ The defendant drew the contract himself and the
language used therein must be construed most strongly
against him. Marron v. Scarbrough, 44 Tenn. App. 414,
314 S. W. (2d) 165.

We are of the further opinion to deny the complainant
the relief he seeks in this case would be inequitable. He
has performed his part of the contract. The contract was
drawn by the defendant, himself, and under its terms no
injustice will be done to him in granting the relief.

■ In conclusion, defendant reminds us of the pre-
sumption of the correctness of the decree of the Chan-
cellor in this Court on review unless we find by a pre-
ponderance of the evidence otherwise. We have indicated
wherein we disagree with the Chancellor and it is our
duty in such a situation to enter such a decree as we deem
the preponderance of the evidence and the law warrant.
Perry v. Carter, 188 Tenn. 409, 219 S. W. (2d) 905.

Therefore, complainant's assignments of error one and
two are sustained.

The decree of the Chancery Court is reversed. A judg-
ment will be entered in this Court for the mandatory in-
junction prayed for in the bill. The cause is remanded to
the Chancery Court for the enforcement of the decree.
All costs are taxed against defendant.

Shriver and Humphreys, JJ., concur.