In re Allen KANE and Patricia Kane, Debtors.

Allen KANE and Patricia Kane, Plaintiffs,

v.

THORP CONSUMER DISCOUNT CO., Defendant.

Bankruptcy No. 81–01694.
Complaint No. 81–0698.

United States Bankruptcy Court,
D. South Carolina.

March 15, 1982.

W. Lewis Burke, Columbia, S. C., for plaintiffs.

J. BRATTON DAVIS, Bankruptcy Judge.

Allen Kane and Patricia Kane (the debtors) commenced this case by filing a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code.

Thereafter, the debtors as plaintiffs commenced this adversary proceeding against the defendant, Thorp Consumer Discount Co. (the creditor). The debtors' complaint alleges that a security interest the creditor purports to hold upon debtors' personal property is void for two reasons. First, the

debtors seek a declaration from this Court that the security interest is void *ab initio* and never enforceable against the debtor because the creditor failed to comply with the requirement of Pa.St.Ann. tit. 12A § 9–110 and 9–203(1)(b) and (2) (hereinafter referred to as the U.C.C.) that the collateral subject to a security interest be described.

The second allegation is that the creditor's security interest is a non-purchase money, non-possessory security interest that impairs the debtors' exemption of household goods and is voidable under 11 U.S.C. § 522(f)(2). This allegation raises a serious constitutional question because the creditor extended credit to the debtors on October 23, 1978 and the security interest purportedly attached on that date. Hence, if created, the purported security interest was created prior to November 6, 1978, the date upon which the President signed the Bankruptcy Reform Act of 1978 (Public Law 95–598) and the process of enacting the Bankruptcy Code was completed.

This Court has previously held that security interests attaching prior to this enactment date cannot be avoided under section 522(f)(2) because such a retroactive application would effect a denial of the due process rights of the creditor under the fifth amendment of the United States Constitution. *In re Glynn*, 13 B.R. 647 (Bkrtcy.D.S.C.1981). The debtors argue that the application of section 522(f)(2) to avoid the purported security interest in this case would not violate the fifth amendment because the security interest purportedly attached after the Bankruptcy Reform Act had passed Congress (October 6, 1978). Therefore, when the creditor made the loan and purportedly retained the security interest it had actual or constructive notice of the affect of section 522(f)(2). Alternatively, the debtors urge this Court to hold its decision in abeyance until the United States Supreme Court rules on the constitutionality of the retroactive application of 522(f)(2) in *Rodrock v. Security Industrial Bank,* 642 F.2d 1193 (10th Cir. 1981) prob. juris. noted *sub nom. United States v. Security Industrial Bank,* —— U.S. ——, 102 S.Ct. 969, 71 L.Ed.2d 108 (1981).

This Court concludes that this adversary proceeding can be resolved without deciding the Constitutional issue raised by the debtors. Therefore, this Court perceives no reason to suspend its ruling upon this complaint until the Supreme Court decides the *Security Industrial Bank* case. This Court holds that the creditor never acquired a security interest on the debtor's personal property and relief can be granted to the debtors without resort to section 522(f)(2).

## FACTS

On October 23, 1978, the debtors borrowed $1555.14 from the creditor, and this loan was evidenced by a "Combined Note and Disclosure Statement of Loan" and a "Security Agreement." Both documents were standard forms prepared and provided by the creditors. These forms were the only documents signed by the debtors in connection with the transaction that gave rise to this adversary proceeding.

The "Note" has several indicia that a security interest was retained by the creditor. First, the debtors apparently purchased household contents insurance for $32.58. Second, the acceleration clause references "any Security Agreement." And, third the Note contains the following:

This Loan is secured by:

[] Credit Insurance proceeds

[] Security Agreement(s) dated

_____

_____

which cover . . . . . . . . . . . . . . . . . . . . . .

) [] Motor Vehicle(s):
) Make ____ Year ____ I.D. # ____
)
) Make ____ Year ____ I.D. # ____
)
) [] All my household goods located in or about my residence.
)
) [] Farm Equipment and/or Products including Livestock, Grain and Crops.

The Security Agreement(s) secure future and other indebtedness (except consumer credit sales) and cover accessions, proceeds; after-acquired personal property excepting consumer goods acquired more than 10 days after today's date; and property insurance proceeds and unearned premiums.

) [] Other (Describe) _____
)
) _____
)
) _____
)
) See Security Agreement(s) for details.

Significantly the security agreement states *inter alia*:

To secure payment and performance of the note and all renewals and extensions and all other obligations (except consumer credit sales) to the Secured Party, I grant a security interest to the Secured Party in all the following property (the "collateral"):

[] a. Vehicle make ____ I.D. # ____ Year ____

[] b. All my household goods located in or about my premises, and the following additional items:

[] c. Only the following items:

including similar property hereafter acquired, accessions, business or farm equipment and accessories, property insurance proceeds and unearned premiums, and other proceeds, together with farm supplies, crops growing or to be grown on the land described below, and products of crops and livestock, but excluding consumer goods acquired more than 10 days hereafter.

If some or all of the Collateral is other than consumer goods, such Collateral is of the following type or types:

| [] Equipment used primarily in business | [] Equipment used primarily in farming operations | [] Farm products |

Address of chief executive office of Debtor if other than the above residence address: _____

The note and security agreement clearly envisioned that the collateral would be described by filling in the blank lines and checking the appropriate boxes upon the creditor's forms. Significantly none of the blanks were filled in and none of the boxes were checked.

## JURISDICTION

The debtors urge this Court to issue a declaratory judgment that the creditor never acquired a security interest on the debtors' property because there was no description of the collateral in the Note or Security Agreement. Therefore, the initial question that must be answered is whether this Court has jurisdiction to grant such declaratory relief.

■ The United States Bankruptcy Courts have jurisdiction over "all civil pro-

ceedings arising under Title 11 or arising in or related to cases under Title 11." 28 U.S.C. § 1471(b). This jurisdictional grant provided by the Bankruptcy Reform Act of 1978 was designed to correct the deficiencies of the Bankruptcy Act of 1898 resulting from

> "the narrow jurisdiction exercised by bankruptcy referees. Under the old system, referees could hear only cases involving the actual disposition of debtors' property or 'summary' suits. Other claims affecting the debtor's assets but not involving distribution to creditors were deemed 'plenary' suits, and had to be filed and tried separately in federal district or state courts.

Note: "Article III Limits on Article I courts: The Constitutionality of the Bankruptcy Court and the 1979 Magistrate Act," 80 Columbia L.Rev. 560 at 562 (1980). This abolition of the summary-plenary bifurcation means that "... all of the issues concerning the debtor can be litigated in this Court." *Cloud Nine Ltd.,* 3 B.R. 202, at 204 (Bkrtcy.D.N.M.1980).

■ With this expanded jurisdiction Congress enlarged the powers of the Bankruptcy Courts in Section 241 of the Bankruptcy Reform Act which enacted 28 U.S.C. § 1481 this section provides "[a] bankruptcy court shall have the powers of a court of equity, law and admiralty..."

These statutes clearly establish both the jurisdiction and authority to grant declaratory relief. The Declaratory Judgments Statute provides in pertinent part:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes .... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested parties seeking such declaration whether or not further relief is or could be sought...

28 U.S.C. § 2201. This statute does not grant jurisdiction, but simply provides a mode of relief for aggrieved persons. *Potomac Passengers Ass'n v. Chesapeake & O. Ry. Co.,* 520 F.2d 91 (D.C.Cir.1975). Even under the old Bankruptcy Act, a bankruptcy court could grant declaratory relief when jurisdiction was present. See *In re United Merchants & Mfrs., Inc.,* 3 B.R. 286 (Bkrtcy. S.D.N.Y.1980).

■ The relief sought by the debtors is an order by this Court declaring that the creditor never acquired a security interest enforceable against the debtors' property under article 9 of the U.C.C.Pa.St.Ann. tit. 12A 9–101 et seq. The debtors and the creditor executed a document captioned "Security Agreement" under which the creditor apparently sought to obtain a security interest upon all of the household property of debtors. The debtors have claimed an exemption covering this property. This exemption is claimed pursuant to 11 U.S.C. § 522 and the applicable state statutes. The allowance of exemptions and the bankruptcy laws are intended to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh..." *Williams v. U. S. Fidelity & G. Co.,* 236 U.S. 549, at 554–555, 35 S.Ct. 289, at 290, 59 L.Ed. 713 (1914). Certainly these exemptions and the concomitant fresh start arise in and are related to the debtors' case under Title 11. A judgment by this Court declaring that the debtors' property is exempt, and not subject to the creditor's purported security interest, would be an appropriate exercise of the Court's jurisdiction under 28 U.S.C. § 1471(b).

## SECURITY INTEREST

Therefore, we must determine in this case whether the creditor ever acquired a security interest upon the debtors' property. If no security interest was created then the debtor never transferred an interest in their property to the creditor.[1] The creditor pro-

1. Cf. *In re Berry,* 10 B.R. 512 (Bkrtcy.D.S.C. 1981) when the debtor attempted to exempt disability payments that he had assigned to an attorney and a bank and this Court held that under 11 U.S.C. § 522(g) a debtor cannot in-

voke the avoiding powers of the trustee to exempt property that had validly and voluntarily been transferred to the creditor. In the present case, if no security interest had ever attached there is no transfer and obviously the

vided the debtors with the two previously mentioned documents. Both of these documents were drafted to enable the creditor to obtain a security interest to secure its loan. But a careful reading of these documents discloses that they contain no description of the collateral for the loan. The note has lines to be filled in and boxes to be checked. All lines are blank and all the boxes are unchecked. The security agreement is similar. Its boxes are unchecked and it contains a rather large blank space where the specific items of collateral could have been listed.

■ The Uniform Commercial Code provides that "a security interest is not enforceable against the debtor ... unless ... the debtor has signed a security agreement which contains a description of the collateral ..." *See* Pa.St.Ann. tit. 12A § 9–203(1)(b). And a description only is sufficient "... if it reasonably identifies what is described." Pa.St.Ann. tit. 12A § 9–110.

Most commentators agree that these provisions should be liberally construed and are clearly intended to eliminate the formalism of the pre-code cases. See J. White & R. Summers, Uniform Commercial Code, at 787–789 (1972). However, White and Summers conclude,

> "Presumably the written agreement must contain at least a general description which an objective observer would find to include the collateral in question. If it does not, the court should find that the writing requirement is not met and should not allow parol evidence further to define the type of collateral in fact covered by the security agreement."

*Id.*, at 788.

In this case the creditor has not answered, appeared or presented any evidence, parol or otherwise, to give any guidance to the Court or the debtors as to what property is covered by the security agreement. The only information as to the collateral covered has been supplied by the debtors in their schedules. The debtors amended their schedules to delineate more clearly the covered property but they could not be specific due to the failure of the Security Agreement to set forth any description of the collateral.

In *In re Bollinger*, 614 F.2d 924 (3rd Cir. 1980) the general requirements for a U.C.C. security agreement under Pennsylvania law were held to be: 1) a writing 2) signed by the debtor and 3) containing a description of the collateral. This holding was applied by a bankruptcy court in *In re Jones*, 13 B.R. 945 (Bkrtcy.E.D.Pa.1981) where the Court said,

> A security agreement, to be valid and enforceable, must contain an adequate description of the collateral. The note signed by the debtors does not contain a description of the collateral although space is provided on the form, nor does any other document in the transaction between Bude and the debtors contain a description.

*Id.* at 947. Therefore, the Court concluded that no security interest existed. The same bankruptcy court in Pennsylvania concluded in another case that the lack of a description "... in itself, is sufficient to preclude the creation of a security interest in the debtors' [property]." *In re Griggs*, 12 B.R. 443 (Bkrtcy.E.D.Pa.1981).

These interpretations of the Pennsylvania U.C.C. are in accord with the interpretations given to other states' U.C.C. provisions. See *In re Delta Molded Products, Inc.*, 416 F.Supp. 938 (N.D.Ala.1976) *aff'd* 571 F.2d 957 (5th Cir. 1976); (applying Alabama law) *Dubay v. Williams*, 417 F.2d 1277 (9th Cir. 1969) (applying Oregon law); and *Food Service Equip. Co. v. First Nat. Bank of Atl.*, 121 Ga.App. 421, 174 S.E.2d 216 (1970) (applying Georgia law).

In *Food Service Equip. Co. v. First Nat. Bank of Atlanta, supra* the court concluded that a security agreement with no blanks filled in was unenforceable despite the sig-

debtor has not made a voluntary transfer. As this court indicated in *Berry*, if a state statute renders the purported transfer unenforceable between the parties, § 522(g) does not preclude the debtor from retaining and exempting the interest purportedly transferred in violation of the statute. 10 B.R. 512 at 515–516 fn. 2.

nature of the debtor on the reverse side. In the present matter, the documents are signed but no blanks have been filled in and no boxes have been checked. Just as in *Food Service*, there can be "no security agreement whatsoever" when vital blank spaces in a printed form contract are not completed. *Id.* 174 S.E.2d at 218. Certainly the creditor "... drew the contract himself and the language therein must be construed most strongly against him." *Turner v. Zager*, 50 Tenn.App. 674, 363 S.W.2d 512, 519 (1962). Also see *Mitchell v. Shepherd Mall State Bank*, 458 F.2d 700 (10th Cir. 1972) (construing the Oklahoma U.C.C.).

Due to the total lack of description in the creditor's documents, this Court holds and declares that the creditor did not acquire a security interest pursuant to the agreement executed on October 23, 1978.

THEREFORE, IT IS ORDERED AND DECLARED THAT:

1) the creditors alleged security interest is and was void *ab initio*; and

2) the debtors are entitled to exempt all property so claimed on their schedules and retain said property free from any claim that may have been asserted by the defendant Thorp Consumer Discount Co.