48

THIRD NATIONAL BANK, Trustee et al., Appellants,
v. GOODLETT REALTY COMPANY, et al., Appellees.
—425 S.W.(2d) 783.

Middle Section. July 28, 1967.

Certiorari Denied by Supreme Court February 5, 1968.

■■■■■■

Douglas M. Fisher, Nashville, for appellants.

Wilson N. West, Nashville, for appellees.

## I

## THE CASE

SHRIVER, J. The bill in this case was filed seeking an injunction and the recovery of damages to a building owned by the complainants, which damages resulted from the demolition of an adjoining building belonging to the defendants. The case was heard by the Chancellor on depositions and documentary evidence and resulted in a dismissal of complainants' bill at their cost. The cross-bill of Goodlett Realty Company was dismissed at its cost.

From the action of the Chancellor in dismissing the bill of complainants they have perfected an appeal to this Court and have assigned errors.

There was no appeal from the action of the Chancellor in dismissing the cross-bill and no assignments have been filed with respect to his action in that regard.

## II

## THE FACTS

As set forth in the original bill the complainant, Third National Bank of Nashville, is Trustee under the will of the late Annie W. Lebeck and, as such Trustee, holds title

to one-half interest in a building located at 158 - 8th Avenue, North, in Nashville, while the complainant, Ira W. Mendell, owns the other one-half of said property as a tenant in common with the Third National Bank, Trustee.

For many years another structure abutted against, or was tied to, the South wall of complainant's building, which structure belonged to the defendant, Goodlett Realty Company.

In November 1963, the defendant, M. W. Clopton, acting on instructions of defendant, Goodlett Realty Company, began demolition of the structure owned by said defendant and this demolition was completed and the lot on which the Goodlett Building stood was cleared off and paved for use as a commercial parking lot.

The bill alleges that the demolition operation was conducted in a careless, haphazard manner with wanton and reckless disregard for the safety of the party foundation and the party wall above it, and that stones from the foundation and bricks from the wall well over the line separating the two pieces of property were displaced and removed by the defendants, leaving in some areas of the wall only one course of brick to support the complainants' structure, where previously there had been three courses. Complainants had the wall examined by architects, engineers and contractors and were advised that safety considerations demanded that it be repaired without delay lest it collapse.

Complainants requested permission from Mr. Goodlett, a representative of defendant company, to have a contractor go onto defendants' property for the purpose of making the needed repairs but were denied this permission unless a letter be written exonerating Goodlett

Realty Company of any responsibility for the damage to the wall and agreeing to pay any loss resulting to Goodlett from the operation.

Complainants further aver that they had been making extensive internal improvements to the building at 158 - 8th Avenue, North, looking to its occupancy by a tenant who has a long term lease and that the deadline for occupancy had passed and that, unless they could proceed to make repairs immediately to the external wall, not only would public safety be jeopardized but also a valuable lease might be lost.

Under these circumstances, they prayed for an injunction to restrain the defendants from interfering with their right to go on the lot of defendants to such extent as was necessary to repair the wall that had been damaged.

The Chancellor granted this injunction and repairs were made.

The defendants answered denying that there was a party wall and denying that they had in any way damaged or interfered with the wall of complainants' building. Filing said answer as a cross-bill, the defendant, Goodlett Realty Company, alleged it was damaged several hundred dollars by the loss of the use of its parking lot during the repairs to the wall made by the complainants.

As hereinabove stated, there was no appeal from the dismissal of the cross-bill and no assignments to that action were filed.

The answer of defendant Clopton simply denies the material allegations of the complainants' bill with respect to any negligence in tearing down the wall of the defend-

ants' building and denies that any damage to the wall of complainants' building had resulted from his operations.

The Chancellor found that there was no party wall between these buildings and, with the finding that there was no party wall, that the rule of Murray v. Patterson, 18 Tenn.App. 30, 72 S.W.2d 558 is not applicable and the defendants were not insurors.

The Chancellor further noted in his opinion that the complainants contended that they had an easement by prescription in said wall, but found that the proof did not meet the requirements as set forth in Nashville Trust Company v. Evans, 30 Tenn.App. 415; 206 S.W.2d 911, and that, therefore, there was no prescriptive easement. For the reasons stated, the original bill was dismissed.

From our consideration of the proof in this case we are of opinion that a clear preponderance of the evidence is to the effect that the wall between the two buildings in question was in fact a party wall.

For example, one of the witnesses called by the complainants was *Mr. Z. J. Wilkinson,* a surveyor, who had been in that type of business 55 years. He introduced a map showing the location of the building in question and was asked whether or not his survey showed an encroachment by the building to the South of complainants' building and his answer was:

"A. It was an encroachment for a distance of approximately 40 feet from Eighth Avenue, North, going East, along the South line of the lot that we surveyed."

And when asked how far over the line the encroachment extended, he answered: "From six to eight inches, I would say."

Mr. Wilkinson was further asked to state whether or not, in his opinion, the wall extending back the first 40½ feet, or so, from Eighth Avenue was a common wall and his answer was, "Apparently, yes."

He was then asked if he observed how much of the wall was left as to thickness and he answered:

"Well, it appeared about, at least one course of brick taken out along there, which would possibly be six or eight inches. It was recessed into the wall of the building left standing."

On cross-examination he was asked if the wall that was taken down was not on the Goodlett property and he answered that it was but also part of it was on the other property. On further cross-examination, on being questioned about photograph Exhibit No. 1, he stated:

"The wall shown here and the fireplaces extended into the wall of the building standing on the North. * * * The wall is shown here and the fireplaces, extended into the wall of the building standing on the North."

And when asked on cross-examination how they were tied together to make them a common wall, he answered:

"Well, I will explain this: that in looking down, even the face of that wall, from the front standing out on Eighth and looking east along the wall, you can see that these fireplaces and flues, and things, were back in this other wall, the wall that was still standing. They had to be tied together. Couldn't have been otherwise, there would have been a space left there when they tore down the old wall."

Mr. William J. Stockard, a structural engineer, testified that he had examined the wall of the building that

was left standing and found structural damage to the building that remained.

He also stated that one course of brick had been removed from the wall of the remaining building over the entire area and, at certain places, only one course remained. He also found that part of the stone foundation had been removed. He expressed the opinion that it was a common wall for use of both buildings.

*Mr. J. D. Lytton* examined the wall while the demolition was in progress and stated, "It looked to me as if it was all one wall." He also testified that the chimneys which extended into both sides of the wall, served both buildings. They had openings for flues on the North side and had fireplaces on the South side.

*Mr. A. A. Boone,* a general contractor, and *Robert C. Akers,* a building contractor, corroborated the foregoing testimony.

*Mr. Donald Phillips,* an officer of the Third National Bank, testified in detail about the wall and the damage to it. He pointed out that a common foundation supported the entire wall—the part torn down and the part left standing—and expressed the opinion, from his observations on the ground and other information, that it was a party wall.

*Mr. W. A. Bryan, Jr.,* was called as a witness for complainant and testified that he is in the real estate and appraisal business; that he had examined the wall of the building of complainants on Eighth Avenue, North and stated:

"The westerly end of that wall, very obviously, was a party wall, and the demolition work, it looked as if half or more of that wall's thickness had been removed."

At another point he stated:

"I determined it was a party wall. There was a survey point, or stob—metal marker—in the property line on 8th Avenue, which showed that it was a party wall. Then from the rear of the wall, beyond where this demolition took out part of the wall, you could see the thickness of a brick to brick and a half there, where that wall was thicker than the remaining wall in the front."

As opposed to the foregoing testimony we have that of *Mr. Clopton*, the contractor who tore down the Goodlett wall, who testified that the two walls were separate, that he did not interfere with the North wall or the wall of the building belonging to complainants, that they were on separate foundations and it ws not a party wall. He also denied doing damage to the North Wall.

Mr. Clopton stated that he made no effort whatever to determine where the party line was. He said: "I didn't even measure nothing about the property line." He admitted that he took out brick about four inches deeper than the line of the veneer stone at the front of complainants' building removing some foundation stone, and could not explain how the gaping foundation hole shown in Exhibit 3 got there. When asked what steps he took to repair or secure complainants' wall he stated: "Well, I didn't take any about repairing it back, because it wasn't my job to do that." With reference to the chimneys, he said that if he had removed any more brick from the chimneys, "A blowing rain could come right in on the man upstairs."

*Mr. Goodlett*, of the Goodlett Realty Company, testified that in his opinion it was not a party wall and denied that

Mr. Clopton, as contractor, or any of the defendants had interfered with complainants' wall, and denied that they had encroached on it or damaged it. On the other hand, neither Mr. Clopton nor Mr. Goodlett denied that the two chimneys which formed a part of the wall that was demolished, also extended into the wall of complainants' property, and Mr. Clopton testified that, in demolishing the Goodlett wall, he took down half of each chimney and left the other half standing because it was evident that if he tore the entire chimney out it would leave a hole or a gaping space in the wall of complainants' property.

*Mr. James A. Hamilton* testified on behalf of the defendants. He stated that he is a Real Estate Engineer, and that he surveyed the line between the two properties in question and came to the conclusion that the new wall, or the portion of the wall that was replaced by the complainants after the demolition of the Goodlett wall, encroached for some distance from the front going toward the back some inches on the property belonging to the Goodlett Realty Company. When asked how far the wall encroached on the Goodlett property he answered: "Well, thirty-two one hundredths of a foot." He denied that the iron pin in the sidewalk at the front which Mr. Wilkinson said marked the corner or the beginning of the line between the properties, was properly located but insisted that it was a fraction of a foot over the Goodlett side.

Mr. Hamilton expressed the opinion that the wall between the two buildings was not a common or party wall.

*Mr. James Wilson,* an architect and engineer, was called on behalf of the defendants and stated that he examined the wall that was left standing and expressed the opinion that it had been built flush up against the

wall to the South of it and that, in his opinion, it was not a common or party wall. When asked on cross-examination if it would surprise him to learn that there were places in the remaining wall that one could poke his finger through and have it visible on the outside, he answered: "Yes, it would."

## III

## OUR CONCLUSIONS

■■ From all of the above this Court, as hereinabove stated, is of opinion that a clear preponderance of the evidence is that this wall had been used for a long time as a common wall between the two buildings. This opinion is particularly reinforced by the fact, which is established beyond question, that two chimneys were so built into these two walls as that there were fireplaces on one side and openings for flues on the other and had been used commonly by the tenants or the occupants of both buildings. These chimneys were so built into the walls of the two buildings as that even Mr. Clopton, the contractor who demolished the South wall, stated that he could not tear down the whole chimney because to do so would leave a space in the North wall with nothing to keep the rain from pouring in.

As was said in Carroll Blake Const. Co. v. Boyle, 140 Tenn. 166, 203 S.W. 945, a party wall may result from an implied contract, and an owner may have a right of support from a neighbor's wall, or, for the purpose of support, the wall may be joint property, notwithstanding the fact that the land upon which it stands is held in severalty. In the same case it was held that the owner of either part of a party wall cannot interfere with the wall in any manner unless he can do so without injury to the adjoin-

ing building or without the consent of the owner of such building, and he is not permitted to tear off the part of the wall that stands on his own lands so as to render the remainder insufficient or unsafe. Furthermore, each owner acquires an easement of support by the party wall as long as it stands and neither is permitted to weaken or destroy it. It was said that each proprietor, where a party wall exists, has an easement in the land of the other for its repair and support.

■■ In Carroll Blake Const. Co. v. Boyle, supra, the holdings of the Court are correctly expressed in the headnotes to the published opinion as follows:

"2. Party Walls. Easement of Support.

Prescription. Where two adjoining owners build a party wall partly on each lot, and by agreement or by continuous use for twenty years treat it as a party wall, each has an easement of support for his half.

3. Party Walls. Joint ownership.

Right of support. For the purpose of supporting their respective houses, a party wall between adjoining lots is joint property, though the land on which it stands is held in severalty, and the right of support that one has in the part of the wall on the other's land extends to sufficient of the adjoining soil to give the wall support.

4. Party Walls. Use. Liability.

An owner and his lessee had the right to make such alterations or repairs in the part of a party wall standing on such owner's lot as were necessary to erect a proposed building, if it could be

done without weakening the wall or impairing the other owner's use of it, and in so doing they stood as insurers to the other owner against injury to his house growing out of the work.''

■ As was pointed out in Dunscomb v. Randolph, 107 Tenn. 89, 64 S.W. 21 and in Daugherty v. Toomey, 189 Tenn. 54, 222 S.W.2d 197 (201) even if a wall rests entirely on the land belonging to one of the adjoining owners this does not destroy its character as a party wall.

■ We think it should be said, however, in the case at bar that, even if it should be concluded from the proof that the wall in question was not a party wall but that there were two separate walls, defendants would still be liable to the complainants for such damage as was done to the existing wall of complainants' building in tearing down and moving the wall of the defendants' building. We think the evidence in this case shows beyond serious dispute that the wall of complainants' building was materially damaged by defendants in taking down and removing the wall of the Goodlett Building and that the wall of complainants' building was left in such condition as that it was dangerous and subject to possible collapse. Furthermore, at some points the wall of complainants' building, even if considered a separate wall, was encroached upon and damaged.

■ The reasonable cost of repair of the damage done was a proper measure of damages in this case. Anderson v. Miller, 96 Tenn. 35, 33 S.W. 615, 31 L.R.A. 604, cited in McKinnon v. Michaud, 37 Tenn.App. 148, 260 S.W.2d 721.

*Mr. Robert C. Akers* testified that the repairs to the wall in question were made at a cost of $4,775.00. Mr. Phillips, representing the complainant bank, testified that

that was the amount paid on behalf of the complainants to accomplish the repairs of the wall made necessary by damages done by the defendants in demolishing the wall of the Goodlett Building.

The defendants insist that complainants are estopped to raise the question of damages to their wall because they stood by and saw the demolition go on without objection to same.

■ We think Mr. Phillips adequately explained this matter by his statement to the effect that it was true he saw the work going on but he did not realize that they were tearing down part of complainants' wall until it had progressed to a point where it had actually been accomplished, and that he never gave permission for them to encroach on that wall either by his silence, or otherwise.

On the whole, we are satisfied that the comlainants are entitled to recover for the damage done, therefore, we award a judgment in favor of complainants against both defendants for $4,775.00 and the costs of the cause.

■ The bill of complaint seeks punitive damages against Goodlett Realty Company because of the action of Mr. Goodlett in declining to permit complainants to go on the Goodlett property to the extent necessary to effect the repairs to the wall. While this action on Mr. Goodlett's part does seem rather arbitrary, we are of opinion that punitive damages should not be awarded.

It results that the judgment of the Trial Court is reversed and a judgment rendered here for $4,775.00 damages in favor of the complainants against both defendants:

Reversed and rendered.

Puryear and Todd, JJ., concur.