**Bill FULLER and wife, Mary Ruth Fuller, Plaintiffs-Appellees,**

**v.**

**ORKIN EXTERMINATING COMPANY, INC., Defendant-Appellant.**

Court of Appeals of Tennessee, Western Section.

Nov. 18, 1975.

Certiorari Denied by Supreme Court Feb. 23, 1976.

William B. Acree, Jr. and Elam, Glasgow, Tanner & Acree, Union City, for defendant-appellant.

Charles E. Maness and Maness, Conley & Hayes, Union City, for plaintiffs-appellees.

CARNEY, Presiding Judge.

The Defendant below, Orkin Exterminating Company, Inc., has appealed from a decree of the Chancery Court of Obion County, Tennessee, awarding a judgment in favor of the Plaintiffs Bill Fuller and wife, Mary Ruth Fuller, in the amount of $15,-375.00 resulting from termite damage to the Plaintiffs' residence in Union City, Tennessee. Fifteen thousand dollars was for damages to the home and $375.00 represented inconvenience to the Plaintiffs during the period of the repairs.

Plaintiffs' home was of wooden construction, one story with a basement containing approximately 3,800 square feet of living space. It had been enlarged and improved on at least two occasions at a total cost of approximately $35,000. The external walls consisted of ¾ inch wood sheathing, masonite siding, black felt paper and aluminum siding. The home had been treated for

termites by a company other than Defendant sometime about 1962 or 1963. It was treated by Defendant Orkin for termites under written contract on April 10, 1972.

At the time of the treatment by Defendant Orkin, the Plaintiff paid $267.00 plus $30.00 for a one-year renewal which gave the Plaintiffs "Orkin Continuous Protection Guaranty" through April 1974 with another $30.00 payment due in April 1974 for the succeeding year. A copy of the Orkin Retail Installment Contract containing one sheet printed on two sides is attached to this opinion as Appendix A.

Though the evidence was sharply in conflict on this question, His Honor the Chancellor found that the termite damage to the Plaintiffs' residence developed after the Defendant Orkin completed its initial treatment of the residence on April 10, 1972. No "Lifetime Control (LC)" guaranty was ever issued by Orkin to the Plaintiffs as indicated on the front of the Retail Installment Contract but Plaintiffs were given a copy of the Orkin Retail Installment Contract.

Plaintiff testified he understood that he was getting the Special Total Protection Lifetime Subterranean Guaranty described on the back of the Retail Installment Contract with a limit of $100,000 repairs to be paid by Defendant. For convenience, we copy pertinent parts of the Retail Contract as follows:

### "ORKIN CONTINUOUS PROTECTION GUARANTY

Orkin's Continuous Protection Guaranty will provide protection of the above named property including Annual Reinspections upon payment of the initial charges and an Annual Renewal Payment of $30.00 starting April 1974 and each April thereafter.

The type of Guaranty checked above will be issued and delivered to the Purchaser upon completion of initial treatment. Guaranty will be effective for an initial period of 24 months and thereafter so long as payments are made in accordance with the Terms and Conditions of this Contract.

If order covers fumigation, Orkin assumes no responsibility for roof damage or shrub damage caused during fumigation procedure unless said damage results directly from Orkin's sole negligence.

This agreement shall be comprised of the Contract, the Graph and Specification Sheets which bear the above-stated Contract Number, the General Terms and Conditions as they appear on the reverse side and upon issuance, the Guaranty.

* * * * *

### SPECIAL TOTAL PROTECTION LIFETIME SUBTERRANEAN TERMITE GUARANTY

Subject to the general terms and conditions, Orkin will issue special total protection lifetime subterranean termite guaranty and, at no extra cost, make such repairs to the structure and contents to remedy any new damage caused by subterranean termites, provided that it is established that said new damage was caused by subterranean termites after the date of initial treatment and that at the time of discovery of the new damage, the damaged areas are infested with live subterranean termites. Orkin will be responsible for such repairs only when made with Orkin approval and under Orkin supervision and control. The purchaser further understands that Orkin's liability for such repairs shall in no event exceed $100,000.00 aggregate loss and is limited to structural and contents damage.

* * * * *

### SUBTERRANEAN TERMITE CONTROL GUARANTY

Subject to the general terms and conditions, Orkin will issue a control guaranty and, at no extra cost, apply any necessary additional treatment to the premises if

reinfestation is found therein during the period of the guarantee. The purchaser further understands that Orkin's liability under this agreement is limited to re-treatment only and in no way, implied or otherwise, is responsible for damages or repairs to the structure or contents.

.    .    .    .    .

GENERAL TERMS AND CONDITIONS

1. It is agreed that under this contract. ORKIN is not responsible for the repair of visible damage existing as of the date of this contract except as such damage is described on the Graph and Specification Sheet and for which a specific charge for the repair of same is made. It is possible that damage may, as of the date of this contract, exist in unexposed areas of the structure or in areas which are inaccessible to visual inspection. For this reason ORKIN cannot guarantee that the damage disclosed by visual inspection of the premises (and which is indicated on the Graph and Specification Sheet) represents the entirety of the damage which may exist as of the date of initial treatment. It is specifically understood, therefore, that ORKIN shall not be responsible for the repair of any damage which existed in areas or in structural members which were not accessible for visual inspection as of the date of this contract.

2. If moisture and/or structural conditions which are conducive to Subterranean Termites are subsequently found to exist, then ORKIN shall be relieved of any and all liability for damage repairs.

3. Structural or mechanical defects which result in water leakage in interior areas or through the roof or exterior walls of the premises may destroy the effectiveness of ORKIN'S treatment, thereby permitting infestation to continue after the date of initial treatment. If such a condition is discovered, it is agreed that the customer will be responsible for making such repairs as are necessary to correct the structural or mechanical defect and ORKIN will, upon completion of said repairs, provide additional treatment deemed necessary by the Company to control the infestation in the area.    .    .    ."

The Defendant contended:

(1) The contract with Plaintiffs did not provide for repairs to the home but only for re-treating the home; that the home was not eligible under Orkin's practices for a repair contract; and

(2) That most of the damages allowed by the Chancellor were expressly excluded from the Repair Contract because they could not be seen in visual examination and/or had occurred prior to April 1972.

The Chancellor held the retail contract to be patently ambiguous and disallowed Plaintiff Bill Fuller's testimony that he understood from Defendant's agent, Morgan, that he, Fuller, was getting a $100,000 Repair Guaranty. However, the Chancellor held the patent ambiguity in the contract should be construed against Orkin as the author of the contract.

The Chancellor also found that the Plaintiffs' house was not adequately treated by Defendant's employees in April 1972; that Defendant's employees failed to reinspect and/or re-treat in 1973 and did not re-treat the home until November 1974 when Plaintiffs threatened a lawsuit.

Assignment of error No. I assails the action of the Chancellor in holding the Retail Installment Contract ambiguous and in construing the same against Orkin so as to entitle the Plaintiff to recover under the "Special Total Protection Lifetime Subterranean Termite Guaranty" copied hereinabove and printed in large type on the back of the contract. It is the contention of Appellant Orkin that only a Lifetime Con-

trol Guaranty was to issue to the Plaintiff and that this Lifetime Control Guaranty did not include any repairs to Plaintiffs' dwelling. No Lifetime Control Guaranty except as shown on the reverse of the contract ever issued to the Plaintiffs. For some unexplained reason, Defendant-Appellant never furnished the Court a copy of the Lifetime Control Guaranty which it contends is usually issued by the company in such cases. Defendant was requested to file a copy of such guaranty. Copies of the Graph and Specification Sheets referred to on the front of the contract were never furnished to Plaintiffs before the trial.

■ We agree with His Honor the Chancellor that the Retail Installment Contract is, in fact, ambiguous. Probably Plaintiff's testimony that Orkin's manager told him at the time of completion of the treating and delivery of the Retail Installment Contract that Fuller had the Lifetime $100,000 Guaranty shown at the top of the back page of the Contract was admissible under *Turner v. Zager*, 50 Tenn.App. 674, 363 S.W.2d 512 (1962). Plaintiffs have not assigned error on the Chancellor's rejection and we do not find it necessary to rule on said question on this appeal.

It is the contention of the Defendant Orkin that on the front of the Contract in small type the various types of guarantees were printed and the type of guarantee which Plaintiffs were to receive was shown clearly by the check mark indicating "Lifetime Control (LC)"; that the checking of this block expressly excluded "Lifetime Control and Repair (LR)" which was not checked. This argument would be much more persuasive if the difference in the two guarantees were spelled out explicitly elsewhere in the contract. On the contrary, it appears that the draftsman used the word "lifetime" on both guarantees on the front side of the Contract and then failed intentionally to define clearly the difference in the two termite guarantees on the back side of the Contract. In one guaranty he used the word "lifetime" which covered repairs

and in the other guaranty which did not cover repairs and provided only for retreatment, he failed to use the word "lifetime."

■ From reading the testimony together with the contract in its entirety, it appears that the Defendant might have made the contract ambiguous as a method of escape, that is, to provide repair in cases of minor damage and refuse repair in cases of major damage. His Honor the Chancellor very correctly applied the rule of construction of long standing in Tennessee that ambiguous language in a contract will be construed most strongly against the author of the language. *Marron v. Scarbrough*, 44 Tenn.App. 414, 314 S.W.2d 165 (1958); *Turner v. Zager*, 50 Tenn.App. 674, 363 S.W.2d 512 (1962); *Associated Press v. WGNS, Inc.*, 48 Tenn.App. 407, 348 S.W.2d 507 (1961); *Hanover Ins. Co. v. Haney*, 221 Tenn. 148, 425 S.W.2d 590 (1968). We concur in the holding of the Chancellor that the Defendant is obligated to make repairs to Plaintiffs' home under the "Special Total Protection Lifetime Subterranean Termite Guaranty" printed at the top of the back page of the Contract and copied hereinabove to a maximum amount of $100,000. Assignment of error No. I is, therefore, respectfully overruled.

We also concur in His Honor the Chancellor's finding that the Plaintiffs' home was not adequately treated by the Defendant's employees in April 1972; that the Defendant's employees failed to reinspect and/or re-treat the home in 1973 and did not retreat the home until November 1974 when Plaintiffs threatened to sue the Defendant. Plaintiffs gave written notice as required by General Condition No. 5 of the Contract. The evidence was sharply controverted. We deem it unnecessary to restate the evidence. Assignments of error Nos. II, III, and IV are respectfully overruled.

Ronnie Hunt, Harold Ray and Marvin Blakemore, builders of Obion County, Tennessee, testified as witnesses for the Plaintiffs that the cost of repairs of the termite damage would, in their opinion, be respec-

tively $21,000, $21,750, and $25,000. Hunt gave as his opinion that the home without termite damage was worth $52,000 and $12,000 with the termite damage at present. Harold Ray testified that the home was worth $50,000 without termite damage and worth $25,000 with the termite damage.

Defendant's witness, Buck Kirk, a builder of Union City, Tennessee, with ten years' experience, testified that a great deal of the damage to the walls of the Plaintiffs' home was caused from fungus or dry rot resulting from the moisture which had accumulated as a result of the aluminum siding, masonite siding and felt on the exterior walls. Kirk testified that it was very difficult to tell the difference between the two types of damage and that in many instances, the damages from fungus was greater than termite damage; that in his opinion a great deal of the damage done to the Plaintiffs' home was a result of moisture and fungus. He estimated the cost of repairs for termite damage to be $3,000 to $4,000. However, he said that he would not take the contract for repairs except on a cost-plus basis.

The Plaintiffs' home and 2.9 acres were assessed at $17,680 for 1972. Defendant Orkin introduced no other proof as to the value of the home before or after the damage or as to the cost of repairs. Plaintiff Bill Fuller testified the valuation of his home for tax purposes was made by the Yoh Company for Obion County, Tennessee, in 1969 while he was doing the last remodeling.

Assignment of error No. V insists that His Honor the Chancellor erred in permitting the Plaintiffs' witnesses, Hunt and Ray, to testify to the value of the property before and after the damage because they didn't know the date upon which to base the value and the repair was based on cost of replacement rather than upon fair market value.

By assignment of error No. VI the Appellant contends that it was error for the Chancellor to permit the witnesses, Ray, Hunt and Blakemore, to testify as to the costs of repairs because such testimony was highly speculative and included damage not caused by termites and because the measure of cost of repairs was not the proper measure of damages.

■ Our appellate courts have uniformly held that the measure of damages for injury to real estate is the difference between the reasonable market value of the premises immediately prior to and immediately after injury but if the reasonable cost of repairing the injury is less than the depreciation in value, the cost of repair is the lawful measure of damages. *Williams v. Southern Ry.*, 55 Tenn.App. 81, 396 S.W.2d 98 (1965). Of course, the trier of fact can also take into consideration the reasonable cost of restoring the property to its former condition in arriving at the difference in value immediately before and after the injury to the premises. *McKinnon v. Michaud*, 37 Tenn.App. 148, 260 S.W.2d 721 (1953); *McCormick on Damages*, 483, Section 126.

In *Third National Bank v. Goodlett Realty Co.*, 58 Tenn.App. 48, 425 S.W.2d 783 (1967), the Court of Appeals awarded judgment for damages to a brick wall based on the cost of repair and in the opinion gave no discussion concerning the difference in value immediately before and after injury. Probably, it was because the cost of repair was less than the difference in value or was the only measure of the difference in value.

His Honor the Chancellor took judicial notice that real estate in the Union City area had greatly increased in value since 1969 and that Plaintiffs' home may have been worth $50,000 but "the Court cannot go along with it being worth that much." He did not determine such value. Apparently, the Court decided that the measure of damages in this case as in *Third National Bank v. Goodlett Realty Co.*, supra, was the cost of repair. He stated that Plaintiffs' witnesses proved damages of about $20,000 so he unquestionably was referring to cost

of repair. Witness Hunt had estimated the difference in value at $40,000 and witness Ray at $25,000. The Chancellor then set Plaintiffs' damages to the house at $15,000, 25 percent less than the lowest amount given by Plaintiffs' witnesses.

As His Honor the Chancellor so aptly commented, Orkin could have eliminated a lot of the questions regarding the amount of damage to the home by doing the repairs itself. On the contrary, its position has been consistently that it is not liable for anything under the contract except the obligation to re-treat the property with pesticide on demand of the Plaintiffs. We hold that the testimony of Plaintiffs' witnesses was admissible. Assignments of error V and VI are respectfully overruled.

Assignments of error VII and VIII that the evidence preponderates against the decision of the Chancellor and that the damages were excessive are overruled.

Assignment of error No. IX insists that the Court erred in not sustaining Defendant's motion for summary judgment and in holding that the Uniform Commercial Code Section alleged in the complaint applied to this transaction. Plaintiffs had alleged that they were entitled to redress under T.C.A. Sections 47–2–313, 47–2–314, 47–2–315, 47–2–317 and specifically claimed incidental damages under 47–2–714 and 47–2–715. We agree that the Uniform Commercial Code applies only to the sale of goods; that the Plaintiffs did not allege any damages from purchase of goods or chattels. Plaintiffs' suit was based on breach of contract for services rendered and to be rendered. The Chancellor properly refused to dismiss Plaintiffs' suit on summary judgment but he should have stricken all references in the complaint based on the Uniform Commercial Code. We hold that the award of $15,000 for breach of contract to treat properly and to reinspect the Plaintiffs' home was within the scope of Plaintiffs' complaint. Assignment of error No. IX is respectfully overruled.

Assignment of error No. X insists that the Chancellor erred in allowing $375.00 as incidental damages for inconvenience to Plaintiffs during the repairs to the home. Plaintiffs' right to recover is for breach of the Special Total Protection Lifetime Guaranty copied above. Under this guaranty, the Defendant agreed to make the repairs but did not agree to pay incidental damages. If Defendant had made the repairs, Plaintiffs would have been inconvenienced. Incidental damages during repairs were not within the contemplation of the parties and Plaintiffs cannot recover them. *West Const. Co. v. Seaboard Air Line Ry. Co.*, 141 Tenn. 342, 210 S.W. 633 (1918); *Hawkins v. Reynolds*, 62 Tenn.App. 686, 467 S.W.2d 791 (1971).

Assignment of error No. X is sustained. The decree below is modified and affirmed with judgment for Plaintiffs for $15,000 with interest from December 19, 1974, the date of judgment below. The costs in the Court below are taxed to Defendant; the costs in this Court are taxed three-fourths to Defendant and one-fourth to Plaintiffs.

MATHERNE and NEARN, JJ., concur.

## APPENDIX A

**RETAIL INSTALLMENT CONTRACT**  **13-523-333**

## Orkin Exterminating Company, Inc.

DATE *APRIL-10-1972*

285-65*871*

PURCHASER'S NAME & TREATING ADDRESS
- TO APPEAR ON THE GUARANTY

*Bill Fuller*

AGENT OR MAILING ADDRESS

PURCHASER'S NAME

*Lot 534 Union City*

NAME

STREET ADDRESS

*Union City Tenn.*

STREET ADDRESS

CITY / STATE  ZIP CODE *885-2073*

CITY    STATE    ZIP CODE

Business Phone (Area Code)   Home Phone (Area Code)

**TYPE STRUCTURE AND GRADE**

**METHOD OF PAYMENT**
- ☑ Cash upon completion  ☐ Financed

ORKIN is hereby authorized to treat the premises described above for the control of:
- ☑ Subterranean Termites
- ☐ Drywood Termites
- ☐ Powder Post Beetles  ☐ Liquid  ☐ Fumigation
- ☐ Wood Borers
- ☐ Moisture Control (No Guarantee)

Orkin is to issue the type of guarantee as checked below
- ☐ Lifetime Control and Repair (LR)  ☐ None
- ☑ Lifetime Control (LC)  ☐ Control Only (CO)
- ☐ Pretreat (PR)  ☐ Drywood Repair (DR)

1. Initial Treatment ..................... $ *96.00*
2. Additional Renewals *1* Year (s) ...... $ *30.00*
3. Total Subject to Sales Tax ............ $
4. Sales Tax: State____City____ ......... $
5. Other Fees... *Stat. Tec.* ........ $ *3.00*
6. TOTAL. Cash Price .................. $ *300.00*
7. LESS: Cash Down Payment ......... $
8. Unpaid Balance of Cash Price ......... $ *30.00*
9. Amount Financed (Same as 8) ......... $
10 **FINANCE CHARGE** .................. $
11. Total of Payments (9 + 10) ........... $
12 Deferred Payment Price (6 + 10) ....... $
13 **ANNUAL PERCENTAGE RATE** ........ %

In consideration of the service and coverage to be provided by Orkin under this contract, the undersigned Purchaser hereby agrees to pay to Orkin Exterminating Company, Inc., its successors or assigns, the "TOTAL OF PAYMENTS" shown above in _____ monthly installments of $_____, and one final installment of $_____, the first installment being payable _____ (month) 5 10 15 20 25 (circle one), 19___ and all subsequent installments on the same day of each consecutive month until paid in full. The finance charge applies from the date of this contract.

In the event of default of any installment, Orkin or its assignee may declare the entire principal sum under this contract immediately due and payable Purchaser agrees to pay a late charge of the lesser of $5.00 or 5% of the amount of any installment which is not received within 10 days of the due date. Where permitted by law, Purchaser agrees to pay all reasonable cost of collection including 15% of the unpaid balance as attorney's fees if collected by law or through an attorney at law. Orkin Exterminating Company, Inc., hereby waives all lien rights on the above described property

### ORKIN CONTINUOUS PROTECTION GUARANTY

Orkin's Continuous Protection Guaranty will provide protection of the above named property including Annual Reinspections upon payment of the initial charges and an Annual Renewal Payment of $ *30.00*

starting *4/11/16 - 1974*  Month & Year _____ and each *April* _____ thereafter. Month

The type of Guaranty checked above will be issued and delivered to the Purchaser upon completion of initial treatment. Guaranty will be effective for an initial period of *24* _____ months and thereafter so long as payments are made in accordance with the Terms and Conditions of this Contract

If order covers fumigation, Orkin assumes no responsibility for roof damage or shrub damage caused during fumigation procedure unless said damage results directly from Orkin's sole negligence

This agreement shall be comprised of the Contract, the Graph and Specification Sheets which bear the above-stated Contract Number, the General Terms and Conditions as they appear on the reverse side and upon issuance, the Guaranty

### NOTICE TO THE BUYER

Do not sign this agreement (contract) before you read it or if it contains any blank spaces. You are entitled to a completely filled-in and exact copy of this agreement (contract). Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the service charge (time price differential or finance charge). Said refund will be based on the rule of "78'S" Keep this contract to protect your legal rights.

ACCEPTED IN ALL ITS TERMS AND CONDITIONS (See Reverse Side) without limitations, it being specifically understood that ORKIN and the undersigned are bound only by the terms of this agreement and not by any other representation, oral or otherwise

ORKIN EXTERMINATING COMPANY, INC

**RETAIL INSTALLMENT CONTRACT**

*105 Volunteer Blvd*
STREET

*Union City Tenn.*
CITY   STATE   ZIP CODE

**ACCEPTED BY:**

BY _____ REPRESENTATIVE

*Bill Fuller*
PURCHASER OR AUTHORIZED AGENT

CUSTOMER COPY   FORM-225 REV 11/70

## SPECIAL TOTAL PROTECTION LIFETIME SUBTERRANEAN TERMITE GUARANTY

SUBJECT TO THE GENERAL TERMS AND CONDITIONS, ORKIN WILL ISSUE SPECIAL TOTAL PROTECTION LIFETIME SUBTERRANEAN TERMITE GUARANTY AND, AT NO EXTRA COST, MAKE SUCH REPAIRS TO THE STRUCTURE AND CONTENTS TO REMEDY ANY NEW DAMAGE CAUSED BY SUBTERRANEAN TERMITES, PROVIDED THAT IT IS ESTABLISHED THAT SAID NEW DAMAGE WAS CAUSED BY SUBTERRANEAN TERMITES AFTER THE DATE OF INITIAL TREATMENT AND THAT AT THE TIME OF DISCOVERY OF THE NEW DAMAGE, THE DAMAGED AREAS ARE INFESTED WITH LIVE SUBTERRANEAN TERMITES ORKIN WILL BE RESPONSIBLE FOR SUCH REPAIRS ONLY WHEN MADE WITH ORKIN APPROVAL AND UNDER ORKIN SUPERVISION AND CONTROL. THE PURCHASER FURTHER UNDERSTANDS THAT ORKIN'S LIABILITY FOR SUCH REPAIRS SHALL IN NO EVENT EXCEED $100,000.00 AGGREGATE LOSS AND IS LIMITED TO STRUCTURAL AND CONTENTS DAMAGE.

## DRYWOOD TERMITE DAMAGE GUARANTY (FUMIGATION TREATMENT ONLY)

SUBJECT TO THE GENERAL TERMS AND CONDITIONS, ORKIN WILL FUMIGATE THE STRUCTURE FOR THE CONTROL OF DRYWOOD TERMITES, AND WILL ISSUE A CONTROL AND REPAIR GUARANTY WHICH WILL PROVIDE FOR RETREATMENT AND REPAIRS AT 'NO EXTRA COST, SHOULD A REINFESTATION BE DISCOVERED DURING THE PERIOD THE GUARANTY IS IN FORCE, THE PURCHASER FURTHER UNDERSTANDS THAT ORKIN'S LIABILITY FOR SUCH REPAIRS SHALL IN NO EVENT EXCEED $100,000.00 AGGREGATE LOSS AND IS LIMITED TO STRUCTURAL AND CONTENTS DAMAGE. THIS GUARANTY IS FOR A MAXIMUM PERIOD OF FIVE YEARS FROM DATE OF ISSUE.

## SUBTERRANEAN TERMITE CONTROL GUARANTY

SUBJECT TO THE GENERAL TERMS AND CONDITIONS, ORKIN WILL ISSUE A CONTROL GUARANTY AND, AT NO EXTRA COST, APPLY ANY NECESSARY ADDITIONAL TREATMENT TO THE PREMISES IF REINFESTATION IS FOUND THEREIN DURING THE PERIOD OF THE GUARANTEE. THE PURCHASER FURTHER UNDERSTANDS THAT ORKIN'S LIABILITY UNDER THIS AGREEMENT IS LIMITED TO RETREATMENT ONLY AND IN NO WAY, IMPLIED OR OTHERWISE, IS RESPONSIBLE FOR DAMAGES OR REPAIRS TO THE STRUCTURE OR CONTENTS.

## POWDER POST BEETLE GUARANTY (LIQUID CHEMICAL TREATMENT ONLY)

SUBJECT TO THE GENERAL TERMS AND CONDITIONS, ORKIN WILL APPLY CHEMICAL TREATMENT (RESTRICTED TO THE UNDERSTRUCTURE OF THE PREMISES NOT INCLUDING AREAS ABOVE THE FIRST FLOOR LEVEL). SHOULD REINFESTATION BE FOUND IN THE TREATED AREAS, ORKIN WILL, AT NO EXTRA COST, PROVIDE ADDITIONAL TREATMENT TO CONTROL THE INFESTATION. THE PURCHASER UNDERSTANDS THAT ORKIN'S LIABILITY UNDER THIS AGREEMENT IS LIMITED TO RETREATMENT ONLY AND IN NO WAY, IMPLIED OR OTHERWISE, IS RESPONSIBLE FOR DAMAGES OR REPAIRS TO THE STRUCTURE OR CONTENTS.

## DRYWOOD TERMITE, POWDER POST BEETLE OR WOOD BORER GUARANTY (FUMIGATION TREATMENT ONLY)

SUBJECT TO THE GENERAL TERMS AND CONDITIONS, ORKIN WILL FUMIGATE THE STRUCTURE FOR EITHER THE CONTROL OF DRYWOOD TERMITES, POWDER POST BEETLES OR WOOD BORERS, AS INDICATED, AND WILL ISSUE A CONTROL GUARANTY WHICH WILL PROVIDE FOR RETREATMENT AT NO EXTRA COST, SHOULD A REINFESTATION BE DISCOVERED DURING THE PERIOD THE GUARANTY IS IN FORCE. THE PURCHASER FURTHER UNDERSTANDS THAT THIS GUARANTY IS FOR A MAXIMUM PERIOD OF FIVE YEARS FROM DATE OF ISSUE. THE PURCHASER FURTHER UNDERSTANDS THAT ORKIN'S LIABILITY UNDER THIS AGREEMENT IS LIMITED TO RETREATMENT ONLY AND IN NO WAY, IMPLIED OR OTHERWISE, IS RESPONSIBLE FOR DAMAGES OR REPAIRS TO THE STRUCTURE OR CONTENTS.

## GENERAL TERMS AND CONDITIONS

1. It is agreed that under this contract, ORKIN is not responsible for the repair of visible damage existing as of the date of this contract except as such damage is described on the Graph and Specification Sheet and for which a specific charge for the repair of same is made. It is possible that damage may, as of the date of this contract, exist in unexposed areas of the structure or in areas which are inaccessible to visual inspection. For this reason ORKIN cannot guarantee that the damage disclosed by visual inspection of the premises (and which is indicated on the Graph and Specification Sheet) represents the entirety of the damage which may exist as of the date of initial treatment. It is specifically understood, therefore, that ORKIN shall not be responsible for the repair of any damage which existed in areas or in structural members which were not accessible for visual inspection as of the date of this contract.

2. If moisture and or structural conditions which are conducive to Subterranean Termites are subsequently found to exist, then ORKIN shall be relieved of any and all liability for damage repairs.

3. Structural or mechanical defects which result in water leakage in interior areas or through the roof or exterior walls of the premises may destroy the effectiveness of ORKIN'S treatment, thereby permitting infestation to continue after the date of initial treatment. If such a condition is discovered, it is agreed that the customer will be responsible for making such repairs as are necessary to correct the structural or mechanical defect and ORKIN will, upon completion of said repairs, provide additional treatment deemed necessary by the Company to control the infestation in the area.

4. Any claim for breach of any Guaranty shall be made forthwith in writing to said ORKIN EXTERMINATING COMPANY, INC., 2170 Piedmont Road, N. E., Atlanta, Georgia 30324. No suit shall lie hereunder unless the provisions of Paragraph 5 have been complied with and unless brought within one (1) year after the making of said written demand.

5. ORKIN'S liability shall be terminated should ORKIN be prevented from fulfilling its responsibilities under the terms of the Contract or the Guaranty by reason of Acts of war, whether declared or undeclared, Acts of any duly constituted Government Authority, strikes, Acts of God or refusal by the customer to allow ORKIN access to the premises for the purpose of carrying out the terms and conditions of this agreement.

6. This agreement covers the premises diagramed on the Graph and Specification Sheet bearing the Contract Number as of the date of actual treatment, and in the event the premises are structurally modified, altered or otherwise changed after date of initial treatment, this agreement shall terminate unless a prior written agreement shall have been entered into between the Owner and the Company to reinspect the premises, provide additional treatment and or adjust the Annual Renewal Fee.

7. It is understood and agreed between the parties that this contract, the Graph and Specification Sheets which bear this Contract Number and, upon issuance, the Guaranty constitute the complete agreement between the parties and that said agreement may not be changed or altered in any manner, oral or otherwise, by any representative of ORKIN unless alteration or change be in writing and executed by a corporate officer of ORKIN EXTERMINATING COMPANY, INC., under this corporate seal.

8. The computation of the "annual percentage rate" on the reverse side hereof is made solely to comply with the Consumer Credit Protection Act (P. L. 90–321) and the regulations of the Federal Reserve Board promulgated pursuant thereto and is not to be construed as or deemed an interest rate applied to or charged in this transaction under the laws of this state.