IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 14, 2007 Session

**JAMES CARSON**

v.

**WASTE CONNECTIONS OF TENNESSEE, INC.**

An Appeal from the Circuit Court for Shelby County
No. CT-006930-04    Robert L. Childers, Judge

No. W2006-02019-COA-R3-CV  - Filed April 27, 2007

This is an appeal of a damage award.  The plaintiff owned a house with a detached carport.  A tenant in the house had agreed to "clean up" the house and lot; to do so, he rented on-site dumpsters from the defendant waste removal company.  During the delivery of a dumpster, the defendant's driver backed the delivery truck into one of the four columns supporting the carport structure.  The carport partially collapsed.  The plaintiff homeowner filed a lawsuit against the defendant waste removal company, alleging negligence and seeking damages.  Prior to trial, liability was conceded; therefore, the primary issue at trial was the amount of damages.  There was disputed testimony on the condition of the roof structure of the carport before the defendant's driver hit it.  After the trial, the trial court found that the carport did not have a "roof" at the time of the accident and determined that the cost of a new roof was $2,000.  Deducting the cost of the "roof," the trial court awarded damages in the amount of $20,000.  The defendant waste removal company now appeals, arguing that the trial court erred in awarding damages or, in the alternative, in its calculation of damages.  Finding that complete justice cannot be had by reason of a defect in the record, we remand the case for further proceedings in accordance with Tennessee Code Annotated § 27-3-128.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is
Remanded for Further Proceedings.**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Pam Warnock Green, Memphis, Tennessee, for Defendant/Appellant Waste Connections of Tennessee, Inc.

Christine W. Stephens and Brett A. Schubert, Memphis, Tennessee for Plaintiff/Appellee James Carson.

# OPINION

Plaintiff/Appellee James Carson ("Carson"), a construction manager, owned certain real property located on Summer Avenue in Memphis, Tennessee. The property had a house and a detached carport. It is currently zoned and used as a commercial property.

In 2003, Carson agreed to allow Fred Burkhalter ("Burkhalter") and his family to live in the house on the property free of charge. In exchange, Burkhalter agreed to "clean-up" the house and lot. Burkhalter testified that he also agreed to perform certain repairs on the house and the detached carport.[1]

As part of the "clean-up" process, Burkhalter rented two on-site dumpsters from Defendant/Appellant Waste Connections of Tennessee, Inc. ("Waste Connections"). On June 15, 2003, Waste Connections' employee, Gregory Walton ("Walton"), arrived on the property to deliver the second dumpster. During delivery, Walton inadvertently backed the delivery truck into one of the four brick columns supporting the structure of the detached carport. The column gave way, causing the carport structure to partially collapse. Burkhalter's work truck was parked in the carport at the time, and an I-beam from the carport structure fell on top of the truck.

Some time in June 2003, after the accident occurred, Carson stopped by the property and discovered the damaged carport. Shortly thereafter, he negotiated with Waste Connections regarding repair and replacement costs for the damaged carport. The parties were unable to resolve the matter.

On July 27, 2004, Carson filed a civil warrant against Waste Connections in the General Sessions Court of Shelby County. In the civil warrant, Carson alleged negligence and sought damages, including prejudgment interest. During the pendency of the General Sessions action, Carson decided that discovery was needed. Consequently, he accepted a judgment in favor of Waste Connections in order to appeal to Circuit Court.

On or about November 23, 2004, Carson appealed the General Sessions judgment to the Circuit Court for Shelby County. Discovery ensued. The cause was set for a bench trial, which occurred on January 9, 2006. By this time, Carson had sold the property for $240,000; the damaged carport was removed from the property after the accident and, from our review of the record, it appears that Carson did not replace the carport prior to his sale of the property.

During opening statements, it became apparent that Waste Connections had conceded liability during discovery. As a result, the primary issue before the trial court was the amount of damages to be awarded to Carson. Thus, for the most part, the testimony focused on the physical condition of the detached carport at the time of the accident, the fair market value of the carport, and the cost of restoring the carport to its former condition. Waste Connections, however, also presented an argument under the doctrine of unclean hands, contending that Carson's testimony would be

---

[1]Previously, Burkhalter had worked for Carson as a subcontractor.

completely refuted by the proof and that he "should not benefit from his perjury." Following statements from counsel, the trial court heard the parties' proof.

Burkhalter testified first.[2] He said that the basic structure of the detached carport originally consisted of four columns and a roof, and that, as part of the trade-out agreement with Carson, he had agreed to replace the roof of the carport. Burkhalter said that, about a week before the accident occurred on June 15, 2003, he had torn the roof off of the carport. At the time, he stated, the roof was "pretty rotten," and it had holes in it through which "you could look up at the sky." Thus, according to Burkhalter's testimony, when the Waste Connections delivery truck backed into the carport, the carport consisted of four brick columns with steel I-beams running from column to column and three I-beams "in the center." In other words, "you had a frame sitting there" with no intact ceiling or roof.[3] Waste Connections introduced into evidence a set of photographs depicting Burkhalter's work truck in the damaged carport with an I-beam resting on its top; the photographs did not depict any other type of debris resting on the truck's top. Burkhalter testified that, prior to taking the photograph, he did not remove any debris from the top of the work truck.

Next, the trial court heard testimony from plaintiff Carson. Contrary to Burkhalter's testimony, Carson asserted that the property was in excellent condition prior to the accident. Carson denied Burkhalter's contention that you could see the sky through the roof of the carport. Carson maintained that the carport needed routine re-roofing every seven or so years and that the cost of doing so was only around $2,000; he said that the carport was re-roofed "probably five years" prior to the accident. Carson also testified that the trade-out agreement with Burkhalter involved only "clean-up" work, that Burkhalter did not have permission to do repairs or to remove the roofing of the carport, and that he never observed Burkhalter removing the roof of the carport when he was at the property and did not know "why he would do it on his own."

According to Carson, when he arrived at the property after the accident, it was obvious that the whole "roof structure" had fallen in on top of Burkhalter's work truck. He insisted that the roof structure, prior to the accident, was fully intact and included the following components:

> [T]here's a C channel, steel C channel, that has ceiling joists, and then there's two by twelves or two by tens that are shot into those steel C channels. And attached to that is the decking, and then the three-ply roof on top of that decking, and then underneath is a beaded board ceiling with a crown mold around the inside of it, and then on the outside is a cornice, which is made up of fascia board, a soffit, a freeze board at the bottom and a shingle strip on top of the fascia.

---

[2] At the time of trial, Burkhalter was no longer a tenant on the property. Following the incident that gave rise to this lawsuit, Carson modified the trade-out agreement to require rental payments of $1,200 per month. Burkhalter failed to make payment and was subsequently asked to leave the premises.

[3] During parts of Burkhalter's testimony, he seemed to indicate that, at the time of the accident, there may have been some of the wooden decking and shingle strip left on the roof structure, but that it was not in "good shape," and a portion of it was "rotten."

After the accident, Carson said, the debris from the "roof structure" was "all over everywhere." However, he could not recall whether there was anything other than an I-beam on top of the work truck. Regarding the photographs about which Burkhalter testified, Carson said, "I'm sure that [Burkhalter] picked up the debris off of his truck." Carson contended that he had "caught Mr. Burkhalter in many lies as he's worked for me over and over again." Carson testified that he had sold the property for $240,000, and opined that, prior to the accident, the fair market value of the property was $265,000.

Following this testimony, Carson presented two estimates of the cost to reconstruct the entire carport, including the roof structure. The estimates were prepared after the damaged carport had been removed from the property. The first estimate was done by Jackie Ward of Five Star Construction. Ward only saw the "footprint" of the carport after it had been removed, and based her estimate on Carson's description to her. She did not testify at trial. The parties stipulated that Ward estimated the total cost of replacing the carport to be $24,214.06.

The second estimate was done by Floyd Newcomb ("Newcomb") of Rana Construction. Newcomb testified at trial. Newcomb's itemized estimate is excerpted below:

|  | Quantity | Total |
|---|---|---|
| 1. Demolition.[4] | 1 ea. | 875.00 |
| 2. Install new 10' pipe structural post with plates. | 4 ea. | 600.00 |
| 3. Surround the 10' post with 16" x 16" brick columns. | 40 l.f. | 1,600.00 |
| 4. Install 2' x 2' x 18" deep footings. | 4 ea. | 200.00 |
| 5. Replace 12" steel girders. | 80 l.f. | 1,200.00 |
| 6. Replace 12" steel I beams. | 288 l.f. | 4,320.00 |
| 7. Install 2" x 10" x 24' rafters. | 25 ea. | 1,150.00 |
| 8. Install wood decking to roof. | 576 s.f. | 524.16 |
| 9. Install 1" x 4" colonial bead tongue and grove ceiling. | 400 s.f. | 1,780.00 |
| 10. Install new 3 1/4" crown molding. | 80 l.f. | 308.00 |
| 11. Install 1" x 12" fascia board. | 96 l.f. | 230.40 |
| 12. Install wood soffit. | 192 s.f. | 249.60 |
| 13. Install 1" x 4" shingle strip. | 96 l.f. | 115.20 |

---

[4]During his testimony, Newcomb acknowledged that the demolition cost in line item 1 should be deducted because the damaged carport had been removed from the property prior to the trial.

| 14. Install continuous soffit vent. | 94 l.f. | 94.00 |
|---|---|---|
| 15. Paint all exposed wood. | 762 s.f. | 685.80 |
| 16. Provide and install built up roof system. | 576 s.f. | 1,699.20 |
| 17. Provide and install metal drip edge. | 96 l.f. | 273.00 |
| 18. Trash container. | 1 ea. | 302.00 |
| Line item total | | $16,206.36 |
| Material Tax    (9.25%) | | $596.56 |
| Profit          (10%) | | $1,620.64 |
| Overhead       (10%) | | $1,620.64 |
| **GRAND TOTAL** | | **$20,044.20** |

Newcomb also testified about the condition of the carport prior to the accident. In April 2003, a couple of months before the accident, Newcomb visited the property to supervise a project on the house. Newcomb described the carport, as it existed at that time, as a "used carport . . . in a used condition, not mint condition." He did not see the carport after April 2003, and had no information on whether Burkhalter had removed any part of the roof structure prior to the accident. Newcomb testified, however, that if the carport did not have a "roof," his estimate would not include line item 16, the "built up roof system,"[5] or line item 17, the "metal drip edge." Newcomb noted that, if the roof structure was fully intact on the day of the accident, it would have been impossible for an I-beam to fall on Burkhalter's work truck without bringing down other parts of the associated structure as well.

Waste Connections presented the testimony of Gregory Walton, the delivery truck driver. Walton was "fired" by Waste Connections sometime after the accident occurred in June 2003, and was not employed by Waste Connections at the time of trial. Because liability was undisputed, Walton's testimony focused on the condition of the carport on the day of the accident. Walton described the carport structure as "nothing . . . but the four columns," i.e., the "columns and the frame around it." Walton testified that no debris other than the I-beam fell on top of the truck when the column collapsed, because "there wasn't anything on the roof." When asked whether there was a wooden ceiling, any decking, or any molding on the carport on the day of the accident, Walton said, "No . . . [b]ecause you could stand there on the side of the truck and look at an angle and look straight up to the sky."

---

[5]The "built up roof system" in line item 16 is the "three-ply roof" included in Carson's description of the carport's roof structure. The three-ply roof consists of three layers of felt and hot tar, which are applied on top of the wood decking.

At the conclusion of the proof, the trial court rendered an oral ruling from the bench, stating:

[T]he measure of damages to real property is the lesser of the following amounts, one, the reasonable costs of repairing the damage to the property or, two, the difference between the fair market value of the premises immediately prior to and immediately after the damage.

The plaintiff, Mr. Carson, has testified that in his opinion the fair market value of the property, on the date of the accident, was $265,000.00. . . . There's nothing in the record to indicate that Mr. Carson's opinion is incorrect about the fair market value of the property. He testified that he sold the property for $240,000.00, which would be a difference of $25,000.00.

The Court finds that . . . the carport was not in a first-class condition, and, based on that, the Court finds that, on the date of the accident, the difference between the fair market value of the premises immediately prior to and immediately after the damage was $20,000.00.

With reference to the cost of rebuilding the carport, the Court finds . . . that the cost of rebuilding the carport so that it would be in a first-class condition would be $22,000.00. However, the proof is that the carport did not have a roof on the day of the accident.

Discounting both Mr. Burkhalter's and Mr. Carson's testimony on that issue, I can't ignore the testimony of Mr. Walton, who was terminated by the defendant after this incident . . . I don't know that he said that it was a result of this incident, but, in any event, he was terminated thereafter, and so there wouldn't be any reason for Mr. Walton to come in and testify to something that he didn't see. So apparently the roof, at the time the accident occurred, was not on the carport.

The proof shows that the cost of putting on the new roof would be approximately $2,000.00. So the Court finds that the cost of repair to put the carport back into the condition that it was on the day of the accident before the accident occurred is $20,000.00.

The Court will award a judgment in favor of the plaintiff and against the defendant in the amount of $20,000.00 plus court costs.

Thus, on the issue of whether the carport had a roof or a roof structure at the time of the accident, the trial court discredited the testimony of both Burkhalter and Carson, and appeared to credit Walton's testimony. It then deducted $2,000 from the damage award for the cost of "putting on [a] new roof." On July 28, 2006, the trial court entered a final order awarding Carson a judgment in the amount of $20,000 and ordering Waste Connections to pay all court costs. Following this order, Waste Connections timely filed a Notice of Appeal to this Court.

On appeal, Waste Connections asks this Court to review two issues: (1) whether the trial court erred in awarding damages to Carson after materially discounting his testimony, and (2), if the decision to award damages is affirmed, whether the trial court erred in its calculation of damages by finding that the carport did not have a "roof," but failing to deduct from the damage award the full

cost of the "top/roof structure." Carson asks this Court to deem Waste Connections' appeal frivolous or taken solely for delay and award damages pursuant to Tennessee Code Annotated § 27-1-122.

Since this case was tried without a jury, our standard of review is *de novo* upon the record. We accord a presumption of correctness to the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's legal conclusions, however, are reviewed *de novo* and accorded no presumption of correctness. ***Campbell v. Florida Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996); ***Presley v. Bennett***, 860 S.W.2d 857, 859 (Tenn. 1993). Further, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge has the opportunity to observe the witnesses in their manner and demeanor and is in a far better position than this Court to decide those issues. ***See McCaleb v. Saturn Corp.***, 910 S.W.2d 412, 415 (Tenn. 1995); ***Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). Thus, "[t]he weight, faith, and credit to be given the witnesses' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight" on appeal. ***Whitaker***, 957 S.W.2d at 837; ***see also Seals v. England/Corsair Upholstery Mfg. Co.***, 984 S.W.2d 912, 915 (Tenn. 1999).

Waste Connections first argues that Carson is not entitled to any award of damages. Waste Connections notes that the trial court did not credit Carson's contention that there was a roof on the carport at the time of the accident, and argues that the remainder of Carson's proof was based on that contention and should therefore be deemed unreliable. As a result, Waste Connections concludes that "[t]here is no reliable evidence left standing" to support the award of damages. In addition, based on the trial court's findings on credibility, Waste Connections contends that Carson intentionally and willfully gave false testimony to the trial court regarding the existence of a roof. Therefore, Waste Connections concludes, Carson should not benefit from an award of damages.[6]

We find no merit in this argument. In the instant case, liability was conceded. In determining the amount of damages to be awarded, the trial court discredited part of Carson's testimony, particularly the portions pertaining to the existence of the roof and the condition of the carport at the time of the accident. These credibility findings were factored into the trial court's calculation and are clearly separable from other evidence on the issue of damages sustained. A finding that a portion of Carson's testimony was not credible does not necessarily mean that Carson intentionally or willfully provided "false testimony." Accordingly, we affirm the trial court's decision to award damages to Carson.

The next issue concerns the trial court's calculation of damages. The parties agree on the measure of property damage in this case:

---

[6]In support of this assertion, Waste Connections cites ***Farmers & Merchants Bank v. Templeton***, 646 S.W.2d 920 (Tenn. Ct. App. 1982), in which this Court stated: "[T]he doctrine of unclean hands repels the unclean plaintiff at the steps of the Courthouse." ***Id.*** at 924.

[T]he measure of damages for injury to real estate is the difference between the reasonable market value of the premises immediately prior to and immediately after injury but if the reasonable cost of repairing the injury is less than the depreciation in value, the cost of repair is the lawful measure of damages. Of course, the trier of fact can also take into consideration the reasonable cost of restoring the property to its former condition in arriving at the difference in value immediately before and after the injury to the premises.

*Fuller v. Orkin Exterminating Co.*, 545 S.W.2d 103, 108 (Tenn. Ct. App. 1975) (citations omitted).

In this appeal, Waste Connections takes issue with the trial court's deduction of only $2,000 for the "roof" of the carport. It argues that this is contrary to the evidence establishing the components of the roof structure as well as the trial court's decision to credit Walton's testimony. Waste Connections asserts that the $2,000 deduction only covers the top layer of the roof structure, i.e., the three-ply or "built up" roof system. Referencing Newcomb's itemized estimate, Waste Connections contends that the trial court should have deducted the costs of the materials listed in line items 7 through 17.[7] As such, it argues, the damages awarded should have been no more than $10,296, representing the cost of rebuilding the four brick columns and replacing the I-beams.[8]

After thoroughly reviewing the record, the trial court's oral ruling appears, on its face, to be internally inconsistent. The trial court found that the "carport did not have a roof on the day of the accident," expressly crediting Walton's testimony on this issue, and discrediting both Burkhalter and Carson. Yet Burkhalter testified that the carport was simply "a frame" without an intact ceiling or roof. In contrast to Burkhalter, Carson testified that the roof and roof structure was intact. At trial, Walton described the carport as "nothing . . . but the four columns" and the "columns and the frame around it." He testified that, aside from the I-beam, no other debris fell on top of Burkhalter's work truck when the carport collapsed because "there wasn't anything on the roof," i.e., no wood ceiling or decking. Indeed, Walton commented that, looking at the carport structure, "you could stand there on the side of the truck and look at an angle and look straight up to the sky." At the very least, Walton's description does not allow for a ceiling or the wood decking, both of which span the top of the carport and are placed under the three-ply roof system. Despite this, the trial court deducted only $2,000 from the total damage award, stating that this amount represented "the cost of putting on a new roof." At the oral argument on this appeal, Carson's counsel conceded that $2,000 would

_____

[7]These items include the rafters, wood decking, ceiling, crown molding, fascia board, wood soffit and soffit vent, shingle strip, paint, built up roof system, and metal drip edge.

[8]In his appellate brief to this Court, Carson maintains that Waste Connections did not present this argument to the trial court and that consequently it should not be considered for the first time on this appeal. *See, e.g., Harlan v. Hardaway*, 796 S.W.2d 953, 957 (Tenn. Ct. App. 1990) ("Appellate courts do not, as a general rule, consider issues not dealt with in the trial court and not properly developed in the proof."). This argument is puzzling, since the issue of whether the carport had a roof at the time of the accident was the focus of the testimony and certainly factored into the trial court's decision. This issue is without merit.

cover only the "top layer" of the roof structure, not including underpinnings such as the ceiling or wood decking.

Thus, the trial court discredited the testimony of both Burkhalter and Carson, whose testimony conflicted on the issue of whether the carport had a roof or the structural support for a roof. It credited the testimony of Walton, who said that there was little or no roof structure. The trial court then deducted $2,000 for the cost of a "new roof," without explaining whether this amount was intended to include the roof's structural support. Waste Connections would have this Court simply modify the award of damages to deduct the cost of several items in the roof structure, such as the ceiling and the wood decking, utilizing the itemized figures provided by witness Newcomb. However, the trial court did not expressly credit or discredit Newcomb's testimony, and at any rate we cannot be certain from the trial court's express findings whether it intended to deduct the cost of such items. Therefore, we decline to modify the damage award as requested by Waste Connections.

Based on the record before us, we are unable to reconcile the inconsistencies in the trial court's ruling; we cannot determine whether the trial court's decision was the result of a mistake or whether the trial court, in light of the evidence before it, made findings not expressly stated in its oral ruling. For this reason, we think it is appropriate to invoke section 27-3-128 of the Tennessee Code Annotated, which provides:

> The court shall also, in all cases, where, in its opinion, complete justice cannot be had by reason of some defect in the record, want of proper parties, or oversight without culpable negligence, remand the cause to the court below for further proceedings, with proper directions to effectuate the objects of the order, and upon such terms as may be deemed right.

T.C.A. § 27-3-128 (2000). Accordingly, we remand the case to the trial court on this issue and instruct that the trial court clarify its findings of fact and its award of damages. On remand, the trial court may, in its discretion, modify the award of damages or conduct any other proceedings necessary or appropriate.

In light of this ruling, we decline to deem this appeal "frivolous or taken solely for delay." T.C.A. § 27-1-122 (2000). Thus, Carson's request for an award of damages under section 27-1-122 is denied.

The decision of the trial court is remanded for further proceedings consistent with this Opinion. Costs of this appeal are to be taxed half to Plaintiff/Appellee James Carson and half to Defendant/Appellant Waste Connections of Tennessee, Inc., and its surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE